(No. 15409.—Judgment reversed and award confirmed.)
The Chicago and Alton Railroad Company, Defend-
    ant in Error, *vs.* The Industrial Commission *et al.*—
    (Martha J. Grant, Plaintiff in Error.)

*Opinion filed December 19, 1923—Rehearing denied Feb. 7, 1924.*

1. Workmen's compensation—*fact of an injury may be estab-
lished by circumstantial evidence.* The fact that the employee was
injured while performing his work may be made out by circum-
stantial evidence, and witnesses may testify as to his actions and
apparent physical condition to establish the fact that he suffered
an injury.

2. Same—*award may be given for death from disease aggra-
vated by an injury.* Acceleration or aggravation of a pre-existing
disease by an injury in the course of employment is an accidental
injury within the meaning of the Compensation act, and where the
workman dies from the aggravated disease his death may be said
to have resulted from the accidental injury and compensation may
be allowed as for an accidental death.

Writ of Error to the Circuit Court of Sangamon
county; the Hon. E. S. Smith, Judge, presiding.

Andrus, Trutter & Crow, for plaintiff in error.

Henry L. Patton, (William L. Patton, and Silas
H. Strawn, of counsel,) for defendant in error.

Mr. Justice Duncan delivered the opinion of the court:

Plaintiff in error, Martha J. Grant, widow of James
W. Grant, deceased, was awarded compensation of $12 per
week for 291⅔ weeks, amounting to $3500, for the death
of her husband while working at defendant in error's shops
at Springfield. The award was confirmed on review by
the Industrial Commission. A writ of *certiorari* was sued
out of the circuit court of Sangamon county, and upon a
hearing the circuit court reversed the finding of the Indus-
trial Commission and set aside the award. This court al-
lowed a writ of error.

The deceased had worked steadily for defendant in error for a year and a half prior to March 8, 1921, the date of his injury, without losing a day. Between three and four o'clock in the afternoon of the day on which he was injured he assisted in carrying a coupler weighing about 300 pounds. The coupler was about five feet long. Grant carried the small end and two other employees the large end. Grant threw the coupler under the car to which it was carried. Within a very few minutes after Grant had performed this service he passed around the end of a car where another employee was at work, with his hand on his stomach. The employee, who was under the car, seeing Grant with his hand on his stomach, asked him what was the matter, and Grant replied that he was hurt. This witness stated that that was all Grant said to him, and that Grant then went to what the witness denominated "the shanty," and that was the last that he saw of Grant. He fixes the time he saw Grant at about ten minutes to four o'clock. Another employee of defendant in error testified that Grant passed him about 3:30 or 3:35 and asked the witness what he was doing, and that he replied that he was putting some bolts in the "swing end;" that Grant was walking about as usual and said to witness, "I must have hurt myself," and that he then walked on. One of the employees who helped carry the coupler testified that they carried it about fifty feet and that nothing out of the ordinary happened while they were carrying it; that after they had carried the coupler, and after Grant had thrown it under the car, he "told us to put the coupler up in there and walked away;" that the place "where the coupler was lifted and the car where Mr. Ruhm was working was about half a block," and that he did not observe what Grant did after leaving and walking away.

The widow of the deceased testified that her husband came home that evening and said that he was suffering, and that he apparently suffered pain all night. He did not sleep

that night. She kept hot water on him all night and the next morning she called Dr. Meyer. Her husband died on Sunday morning, March 13, at 1:30 o'clock, leaving surviving him two children, Roy, nineteen, and Kenneth, seventeen years of age, and the witness as his widow.

Dr. Meyer testified that early in the morning of March 9, 1921, he was called to the residence of the deceased and found him suffering from extreme abdominal pain,—paroxysmal pains; that he was not in much shock at the time but suffered from abdominal pains, which are characteristic of any intestinal irritation possible; that he gave the usual medical treatment and left; that about three or four o'clock in the afternoon of the same day he was again called and found him not so well and suggested sending him to the hospital for further treatment; that he saw him that night and his condition was worse; that he knew he had some abdominal pathology because he had extreme pain and no bowel movement and was beginning to show signs of shock; that when he saw the aggravated condition he decided to, and did, perform an operation on him at the hospital that evening, which revealed that the head of the large bowel, the cecum, and the appendix attached to it, had worked their way into the left inguinal region and had become adhered in that region; that he found a large mass of adhesions, and in trying to liberate the cecum brought out a mass of thick, yellow, creamy pus, which he drained and then put the patient to bed again, and that he died the following Sunday, March 13. He further testified that the adhesions and the denseness of them proved that the deceased had had those conditions for weeks and maybe months, the time being hard to determine, and that the conditions were such as could be aggravated or accelerated by a strain. In answer to a hypothetical question based on the facts proved, the doctor testified that with the accumulation and adhesions and the abscess in his side at such a vital area, deceased's condition would naturally be aggravated by any jar or strain

or lifting, and that such jar, strain or lifting would probably increase the conditions he found. He also testified that the bowels were obstructed by the adhesions and by kinks in the cecum, and for that reason there had been no evacuation of the bowels; that in attempting to evacuate the bowels, if it should be occasioned with difficulty and strain, that could have the same effect as a strain by lifting.

The foregoing is a complete summary of the evidence up to the date of Grant's death and from the time of the accident, so far as the record discloses. The testimony further shows that just after the death of the deceased, and on the day of such death, a clerk of the defendant in error called up one of the employees who had assisted Grant in carrying the coupler and told him that Grant had died and that he wanted the employee to make a statement and give him the facts as to how the accident occurred; that he did so, and that the clerk made up the report and said he would have to send a report to every man on the C. & A.

It is the claim of the defendant in error that the record shows no competent evidence that there was an accident to Grant which arose out of and in the course of his employment; that assuming that there was an accident and that it arose out of and in the course of the employment, there is no evidence that it caused or contributed to the death of Grant; that no other conclusion can be reached unless resort is had to conjecture and surmise, purely. It is also claimed that the declarations of the deceased above disclosed are not admissible because hearsay evidence or self-serving declarations and are not part of the *res gestæ*. It is also argued that the evidence shows that the deceased's death, or the strain which aggravated his condition and contributed to his death, if his death was produced or contributed to by a strain, is attributable as well to a severe strain by the deceased while attempting to evacuate his bowels as to that of a strain by lifting and carrying the coupler and throwing it under the car. It is therefore claimed that the evi-

dence leaves it in doubt as to whether the accident was the direct cause of the injury, and the cause or a contributory cause of his death. This last claim is not supported by the evidence, as the evidence does not show that there was an attempted evacuation of the bowels by the deceased, and it is all mere assumption on the part of the defendant in error that there was such an attempt made. The evidence clearly and circumstantially shows that the only strain to which the deceased was subjected was by the lifting and handling of the heavy coupler.

The evidence in this case evidently could and should have been made much more definite than it appears in this record. This lack of definiteness, as is clearly apparent, is in not fully showing just what the deceased and the other two employees were intending to do or were ordered to do with the coupler. It is certain that it was the duty of these three employees to make some further use and disposition of the coupler, but all we get out of the evidence is that after the deceased threw the coupler under the car he told the other two employees to put the coupler "up in there and walked away." It would have been very material to show that there was something further for the deceased to do with this coupler in connection with the other two employees. However, the evidence sufficiently shows, circumstantially, that at this particular time he walked away from the other two employees after giving the instruction aforesaid, but why he walked away and did not further help them with their work is not disclosed. It is disclosed, however, that he did walk away very unceremoniously, and that from that place he walked by another employee, Ruhm, who testified that he passed him with his hands on his stomach and said he was hurt. If all this evidence were competent it would tend to show, with the rest of the evidence that followed, that he walked away from the two employees who were handling the coupler because of the fact that he had sustained an injury and was not able or did not feel like do-

ing anything further with the coupler. The evidence does show circumstantially that he had an accident or an injury or severe strain through handling the coupler and that was what gave him the pain, and the rest of the evidence, including that of the physician, justifies the conclusion of the commission that he sustained an accident or a severe pain through a strain in handling the coupler, which contributed to his death in a little less than five days thereafter. This court has repeatedly ruled that facts may be proved by circumstantial evidence. The case was made out by circumstantial evidence, and we think the lower court erred in setting aside the award of the commission.

Conceding that the verbal statements made by the deceased, which are shown in the record to have been made after his injury, are not a part of the *res gestæ* and therefore not admissible, still it was competent for the plaintiff in error to prove that he manifested pain by holding his hand on his stomach when he passed the employee who so testified, just after his injury. In *Cicero Street Railway Co.* v. *Priest,* 190 Ill. 592, this court held that it is proper to permit a witness to state how the plaintiff in a personal injury suit appeared with reference to pain and suffering. Such a witness may testify that the injured person appeared to be suffering pain and to state any natural manifestation of pain exhibited by him in connection with the injury, whether by groans, expression of the features or in other ways. The deceased by his action in holding his hands on his stomach clearly manifested to the employee whom he passed just after he was injured that he was in pain, and this appears from the fact that the employee he was passing was so impressed with the idea that he was suffering with pain that he asked him the direct question as to what was the matter with him. So, excluding all the declarations of the deceased to the effect that he was injured, or that he must have hurt himself, or that he was hurt, the weight of the evidence shows that he was injured

in the handling of the coupler; that he had suffered an ac-cident within the meaning of that term in the Compensation law; that as a result of that injury, or the aggravation of his condition by the strain in handling the coupler, he died within five days of his injury,—that is to say, that the accidental injury contributed to his death. Where a workman dies from a pre-existing disease or condition, if the disease or condition is aggravated or accelerated under circumstances which can be said to be accidental his death results from injury by accident. Acceleration or aggravation of a pre-existing disease is an injury caused by accident. *Peoria Railway Terminal Co.* v. *Industrial Board,* 279 Ill. 352; *Baggot Co.* v. *Industrial Com.* 290 id. 530.

The judgment of the circuit court is reversed and the finding and award of the commission are confirmed.

*Judgment reversed and award confirmed.*