[No. 19569. Department Two. February 4, 1926.]

ANNIE FRANDILA, *Respondent*, v. DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1] MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION—FORTUITOUS EVENT—AGGRAVATION OF PRE-EXISTING DISEASE. A workman's death was caused by a "fortuitous event" as distinguished from the "contraction of disease" within the workmen's compensation act, § 7675, where it appears that he suddenly collapsed while engaged in hard work requiring extra effort, and that he was suffering from hardening of the arteries, which, coupled with over-exercise, caused either hemorrhage or embolism.

Appeal from a judgment of the superior court for Grays Harbor county, Campbell, J., entered April 30, 1925, upon findings in favor of plaintiff, reversing on appeal from the rejection by the department of labor and industries of a claim under the workmen's compensation act. Affirmed.

*The Attorney General* and *M. H. Wight, Assistant,* for appellant.

*G. F. Vanderveer* and *S. B. Bassett,* for respondent.

MACKINTOSH, J.—Gust Frandila was a coal miner, and in June, 1924, was sixty years of age. For eight months prior to June, he had been out of employment, and what work he did during that period was limited to chopping firewood for his home. On the 2nd day of June, he was employed to assist in digging a ditch for a sewer in one of the streets of Hoquiam. He went to work at one o'clock in the afternoon, and, about three hours thereafter, he was noticed by the foreman to stop chopping on a root at the bottom of the ditch, which was then some 4½ feet deep, throw away his ax, lean against the ditchside and collapse. Assistants went to him, and he was picked up and brought out onto the

[1]Reported in 243 Pac. 5.

sidewalk, where he died in about fifteen minutes. The ditch was being dug through a clay soil, and the witnesses testified that it was hard digging. It was necessary to cut out roots of varying sizes, and the root, upon which Frandila was working at the time of his collapse, was from six to eight inches in diameter. Witnesses also testified that the cutting of these roots was hard work. The testimony established that the workman was suffering from hardening of the arteries, and that he died from either a rupture of a blood vessel or embolism. The respondent, the workman's widow, made claim for compensation to the appellant, the department of labor and industries; and, the claim having been disallowed, an appeal was taken to the superior court, which reversed the action of the department, and from that decision the appeal is taken here.

The department contends that the death of the workman was not occasioned by a fortuitous event, in that there was no unusual strain or exertion, but that it was occasioned by the hardening of the arteries, which is a slow, progressive disease, and, when sufficiently advanced, produces death under ordinary exertion. Section 7679, Rem. Comp. Stat., provides that every injured workman, or his family, is entitled to compensation where death results from an injury, and, in § 7675, "injury" is defined as referring "only to an injury resulting from some fortuitous event as distinguished from the contraction of disease." The question then is, whether the testimony in this case shows a fortuitous event.

[1] It is plain from the evidence that the hardened arteries, coupled with over-exercise in the course of employment, caused either the hemorrhage or embolism. The chopping of the root was a definite and particular occurrence, which was the contributing, proximate

cause of the death.  The question of whether an injury
has been the result of an accident or an accident aris-
ing out of the employment, which are narrower terms
than fortuitous event, has been considered by many
courts, and the result of these decisions seems to be,
that an accident exists when a man undertaking work
is unable to withstand the exertion required to do it,
whatever may be the degree of exertion used or the
condition of the workman's health.  The supreme court
of Kansas, in *Gilliland v. Ash Grove Lime & Portland
Cement Co.,* 104 Kan. 771, 180 Pac. 793, reviews many
of the English cases upon this subject and announces
this rule.

In *Madden's Case,* 222 Mass. 487, 111 N. E. 379,
Chief Justice Rugg, of the Massachusetts supreme
court, used this language:

"When a pre-existing heart disease of the employe
is accelerated to the point of disablement by the exer-
tion and strain of the employment, not due to the char-
acter of the disease acting alone or progressing as it
would in any rational work, there may be found to have
been a personal injury."

The supreme court of Maine, in *Brown's Case,* 123
Me. 424, 123 Atl. 421, where death resulted while the
workman was shoveling snow from a roof, the exertion
causing acute heart dilation, held that this was an acci-
dent, the court saying:

"The defendants contend that there is no evidence
of accidental injury; that what occurred was the devel-
opment of disease, and not the happening of an acci-
dent.

"The word 'accident,' frequently the subject of ju-
dicial interpretation, has been recently defined by this
court with copious citation of authorities. *Patrick v.
Ham,* 119 Me. 517, 111 Atl. 912, 13 A. L. R. 427.  By all
authorities an occurrence to be accidental must be un-
usual, undesigned, unexpected, sudden.  The word is
commonly predicated of occurrences external to the

body, e. g. wrecks, explosions, collisions, and other fortuitous mishaps in the world of things about us.  Such external accidents may or may not cause bodily injuries.  But an internal injury that is itself sudden, unusual, and unexpected is none the less accidental because its external cause is a part of the victim's ordinary work.

"If a laborer performing his usual task, in his wonted way, by reason of strain, breaks his wrist, nobody would question the accidental nature of the injury.  If instead of the wrist it is an artery that breaks, the occurrence is just as clearly an accident."

In *Babich v. Oliver Iron Mining Co.,* 157 Minn. 122, 195 N. W. 784, 202 N. W. 704, the supreme court of Minnesota held that a sudden break in the physical structure of the body of the employe, caused by some strain or exertion in the employment of the master, was an accidental injury, even though there was no external unforeseen event, such as slipping, falling or being struck.  See, also, *State ex rel. Puhlmann v. District Court of Brown County,* 137 Minn. 30, 162 N. W. 678.

The supreme court of Indiana, in *Haskell & Barker Car Co. v. Brown,* 67 Ind. App. 178, 117 N. E. 555, was considering the case of a workman who was killed while unloading steel sheets from a car.  The workman was suffering from hardening of the arteries, and the work which he was doing increased the strain upon the arteries by the increased blood pressure.  The court held that his death was due to an accident, that that word is used in its popular sense and means any unlooked for mishap or untoward event, not expected or designed.  See, to the same effect: *Indian Creek Coal & Mining Co. v. Calvert,* 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709; *General American Tank Car Corporation v. Weirick,* 77 Ind. App. 242, 133 N. E. 391.

In *Chicago & Alton R. Co. v. Industrial Commission,* 310 Ill. 502, 142 N. E. 182, the supreme court of Illinois

held that the death of an employe, from a pre-existing disease or condition which was aggravated or accelerated by work being performed by him, was caused by an accident. The same court decided similarly in: *Peoria R. Terminal Co. v. Industrial Board of Illinois,* 279 Ill. 352, 116 N. E. 651; *Jones Foundry & Machine Co. v. Industrial Commission,* 303 Ill. 410, 135 N. E. 754. The supreme court of Pennsylvania made a similar decision in *Samoskie v. Philadelphia & Reading Coal & Iron Co.,* 280 Pa. St. 203, 124 Atl. 471.

In *Fowler v. Risedorph Bottling Co.,* 175 App. Div. 224, 161 N. Y. Supp. 535, we find a review of many cases presenting facts similar to those in the case at bar. The workman, in that case, suffered a cerebral hemorrhage while lifting a barrel, and it is claimed that his condition was the natural progress and result of disease, and not of accidental personal injury arising out of his employment. The court held that the hemorrhage resulting from the strain in lifting, while the claimant was engaged in his usual employment, constituted an accidental injury, that it was not necessary that the injury should be such as to present a visible or external sign.

Similar decisions were made by the English courts and are found reported in: *Johnson v. Owners of Ship "Torrington,"* 3 B. W. C. C. 68; *Trodden v. Lennard,* 4 B. W. C. C. 190; *Doughton v. Hickman,* 6 B. W. C. C. 77. An interesting and instructive discussion of this subject is found in the House of Lords case, *Clover, Clayton & Co. v. Hughes,* 26 Times L. R. 359, where in the course of the opinion of the Lord Chancellor he said:

"A workman, while engaged in tightening a nut with a spanner, strained himself and thereby ruptured an aneurism of the aorta, which caused his death. A post-mortem examination showed that the aneurism was in

such an advanced condition that it might have burst while the man was asleep, and that very slight exertion or strain would be sufficient to bring about a rupture.

". . . I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. It is found by the County Court Judge that the strain in fact caused the rupture, meaning, no doubt, that if it had not been for the strain the rupture would not have occurred when it did. If the degree of exertion beyond what is usual had to be considered in these cases, there must be some standard of exertion, varying in every trade. Nor do I think we should attach any importance to the fact that this man's health was as described. If the state of his health had to be considered, there must be some standard of health, varying, I suppose, with men of different ages. An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health.

"It may be said, and was said, that if the Act admits of a claim in the present case, every one whose disease kills him while he is at work will be entitled to compensation. I do not think so, and for this reason. It may be that the work has not, as a matter of substance, contributed to the accident, though in fact the accident happened while he was working. In each case the arbitrator ought to consider whether, in substance, as far as he can judge on such a matter, the accident came from the disease alone, so that, whatever the man had been doing, it would probably have come all the same, or whether the employment contributed to it. In other words, did he die from the disease alone, or from the disease and employment taken together, looking at it broadly. Looking at it broadly, I say, and free from overnice conjectures, was it the disease that did it or did the work he was doing help in any material degree?"

Reference to the cases from this court where the question of fortuitous event has been considered shows that those decisions are in harmony with the ones al-

ready referred to from other jurisdictions. In *Horsfall v. Pacific Mutual Life Ins. Co.,* 32 Wash. 132, 72 Pac. 1028, 98 Am. St. 846, 63 L. R. A. 425, this court considered what was embraced within the term "accident" as applied to accident insurance policies. In *Zappala v. Industrial Insurance Commission,* 82 Wash. 314, 144 Pac. 54, L. R. A. 1916A 295, we said on this subject:

"It is the contention of the commission that these circumstances do not disclose that the injury resulted from 'a fortuitous event,' and that no accident occurred which produced the injury; contending that, inasmuch as respondent did not slip or fall, nothing struck him, and nothing happened out of the ordinary which produced the rupture or hernia, it cannot be said that the hernia resulted from some fortuitous event. Fortuitous is defined as: 'Occurring by chance as opposed to design; coming or taking place without any cause; accidental; casual;' and a fortuitous cause is said to be 'A contingent or accidental cause.' Standard Dictionary.

"To hold with the commission that if a machine breaks, any resulting injury to a workman is within the act, but if the man breaks, any resulting injury is not within the act, is too refined to come within the policy of the act as announced by the legislature in its adoption and the language of the court in its interpretation. The machine and the man are within the same class as producing causes, and any injury resulting from the sudden giving way of the one, while used as a part of any industry within the act, is as much within the contemplation of the act as the other."

On the same subject, in *Stertz v. Industrial Insurance Commission,* 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B 354, the court used this language:

"In this last we notice, first, not merely the avoidance of 'accident' but of 'arising out of the employment,' the use of which this definition fairly invited if that were to be meant. Second, exclusion by enumera-

tion. Disease is excluded; everything else is included. Lastly, *'fortuitous event,'* the strongest term that could be used, no popular expression but one used by lawyers for positive strength, a term in truth that is selected when one wishes all of 'accident' and more."

In *Shadbolt v. Department of Labor & Industries,* 121 Wash. 409, 209 Pac. 683, this expression occurs:

"It may be accepted as the law, as contended by the appellant, that there must be a definite or particular occurrence to which the injury can be attributed. The evidence in this case meets this requirement and fixes the occurrence at the time of the first illness. Even though the appendix was diseased and in course of time would have ruptured without any external pressure, if its rupture was accelerated by such pressure, this would constitute an injury."

See, also, *Clark v. Department of Labor & Industries,* 131 Wash. 256, 230 Pac. 133.

The contributing and proximate cause of the workman's death was an unlooked for mishap and untoward event, not expected or designed. The exertion necessary to cut the root in the bottom of the trench was the extra weight thrown into the scale, along with the workman's physical condition, which occasioned the injury. It is not necessary, in order for a person to recover compensation as an injured workman, that he must have been in perfect health at the time he received the injury. That is not the intent of the act, and it cannot reasonably be given any such interpretation. Where a workman, not in perfect health, during the course of his employment makes an extra exertion which, in addition to his infirmity, causes an injury, such injury is a fortuitous event, and brings him within the operation of the compensation.

The judgment is affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and MAIN, JJ., concur.