[No. 23784. Department One. May 26, 1932.]

ETHEL MAE METCALF, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General, Harry Ellsworth Foster, Assistant,* and *Granville Egan,* for appellant.

*Harry L. Parr* and *Chas. R. Lewis,* for respondent.

*Albert H. Solomon, Amicus Curiae.*

HERMAN, J.—August 21, 1930, Alva Metcalf was engaged in bucking logs in Thurston county. A tree had fallen across the road, and Mr. Metcalf was working rapidly in order to get the road open so that a man

[1]Reported in 11 P. (2d) 821.

named Benson might pass. The log was approximately twenty-one inches in diameter at the point he was sawing, and it was in such a position that the saw was being pinched, thereby requiring more exertion to propel the saw. Mr. Metcalf was working in a very inconvenient place, sawing with one knee on the ground. When the log was almost sawed through, he fell over and died without regaining consciousness.

A claim was filed with the department of labor and industries on behalf of Ethel Mae Metcalf, his widow, decedent's minor son, Jacob Elroy Metcalf, and the undertaker. The claim was rejected. After notice of rejection, claimant petitioned for a rehearing before the joint board, which was granted, and thereafter the joint board sustained and affirmed the former order denying the claim upon the grounds that Mr. Metcalf's death was not the result of an injury within the meaning of the act, and that there was no proof that he met his death during the course of his employment.

Mrs. Metcalf appealed to the superior court, which reversed the decision of the department of labor and industries, and entered judgment accordingly. From the judgment allowing the claim of the widow, the minor son and the undertaker, the department of labor and industries has appealed.

Appellant's assignments of error present the question whether a strain is an injury, within the definitions of the industrial insurance act.

Respondent has directed the court's attention to Rem. Comp. Stat., § 7673, which reads as follows:

"The common-law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has

reached the workman and that little only at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided.''

 The workmen's compensation act of this state originally defined the word ''injury'' as referring ''only to an injury resulting from some fortuitous event as distinguished from the contraction of a disease.'' Appellant has called our attention to the most recent definition of the word ''injury'' by our legislature, pointing out that it omits the words ''fortuitous event.'' That definition is set forth in Laws of 1927, chapter 310, p. 815, § 2 (Rem. 1927 Sup., § 7675), and reads as follows:

''The word 'injury' as used in this act means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical condition as results therefrom.''

This latter definition of the word ''injury'' was reiterated by the legislature in Laws of 1929, chapter 132, p. 328, § 1.

In *Pellerin v. Washington Veneer Co.*, 163 Wash. 555, 2 P. (2d) 658, which was decided after our legis-

lature had thus amended the definition of the word "injury," the court held that disability produced by carbon bisulphide poisoning in the course of, and as a result of, the employment, is not an "injury" within the meaning of the workmen's compensation act. In its decision, the court said:

"The manifest intention of the legislature in the enactment of the new definition of injury was to make more certain the definition of injury and make it apply strictly to sudden and tangible happenings occurring from without of a traumatic nature producing an immediate or prompt result, as distinguished from anything like an occupational disease."

In the case at bar, there was evidence that Mr. Metcalf collapsed when he was sawing a log, between one and two o'clock in the afternoon of a hot day. The log that he was sawing lay so that he had to work in an unusual position with one knee on the ground. A man was waiting to use the road which the log blocked. The log was pinching the saw, requiring more than ordinary exertion for the sawing. Mr. Metcalf was working much faster than is customary for a man sawing logs when he fell unconscious. He died from a cerebral hemorrhage caused by a bursting blood vessel. Doctor G. T. Pool testified as follows:

"Q. In your opinion Doctor, if he had been resting at that time and not making any physical exertion would his death have occurred at that time? A. I don't think so. I am quite sure it would not. . . . Q. Do you think he had hardening of the arteries? A. Yes. Q. And that his work caused the heart to beat faster? A. Yes. Enough so that one of the arteries in the brain burst and that was the cause of his death. Q. His work caused his heart to beat faster, Doctor? A. Yes. And that caused the blood to be pumped through the vessels more rapidly and making a greater pressure on the blood vessels causing them to break. . . . Q. In his condition then, as you understood it,

could he have suffered cerebral hemorrhage from ordinary exertion which could have raised the blood pressure? A. Well he could, but in this case he was doing too strenuous labor, and that would be my opinion as to what brought it on.''

Funk & Wagnalls' New Standard Dictionary of the English Language defines the word ''traumatic'' as follows: ''Of or pertaining to trauma.'' ''Trauma'' is defined by the same authority as, ''any injury to the body caused by violence.'' Had Mr. Metcalf's violent efforts sawing the log, in an attempt to clear the road for Mr. Benson's passage, resulted in a sprained wrist, a torn tendon or a dislocated shoulder, any one of those injuries would clearly have been

''. . . a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical condition as results therefrom.''

The fact that his arteries had so hardened that death was likely to result ''from a sudden and tangible happening of a traumatic nature,'' does not deprive Mr. Metcalf's widow and minor child of their right to statutory benefits. It was not the legislature's purpose to limit the provisions of the workmen's compensation act to only such persons as approximate physical perfection.

Judgment affirmed.

MAIN, MITCHELL, BEALS, and MILLARD, JJ., concur.