[No. 27984.   Department Two.   November 6, 1940.]

MADELINE E. BARNES, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Defendant,* WEYERHAEUSER TIMBER COMPANY, *Appellant.*[1]

[1]Reported in 106 P. (2d) 1069.

*L. B. Donley,* for appellant.

*Hogan & Adams,* for respondent.

DRIVER, J.—Madeline E. Barnes filed a claim with the department of labor and industries for a widow's pension under the workmen's compensation act. It was rejected by the supervisor of industrial insurance. The joint board granted a rehearing and, after reviewing the testimony, all of which had been taken before examiners or by deposition, reversed the supervisor and allowed the claim. The employer, Weyerhaeuser Timber Company, appealed to the superior court, where a trial without a jury on the departmental record resulted in findings and judgment affirming the decision of the joint board. The employer has appealed to this court.

The appellant's sole contention is that the respondent is not legally entitled to a pension because her husband's death did not result from any injury sustained in the course of his employment within the contemplation of the workmen's compensation act. This contention presents primarily a question of fact. Its determination necessarily requires a somewhat detailed review of the evidence, as the hearing in this court is *de novo. Hodgen v. Department of Labor & Industries,* 194 Wash. 541, 78 P. (2d) 949; *Cooper v. Department of Labor & Industries,* 195 Wash. 315, 80 P. (2d) 830; *Langford v. Department of Labor & Industries,* 195 Wash. 412, 81 P. (2d) 277; *Hoff v. Department of Labor & Industries,* 198 Wash. 257, 88 P. (2d) 419.

Respondent's husband, Ralph E. Barnes, had been employed as a machinist in appellant's logging camp for several months prior to March 19, 1937. He was

forty-seven years of age and appeared to be a robust, healthy man. Late in the afternoon of that day, with the aid of two assistants, he undertook to change the main gear on a locomotive crane. The gear, or cogwheel, was in two sections, each weighing 126½ pounds, and, in order to get it on the drive axle, the crane was placed on a railroad track above a pit about four feet wide and four feet deep. The three men got down into the pit, and, after one of the sections had been placed on top of the axle, the other section was lifted into position beneath the axle, and Mr. Barnes then stood on a small block and held the lower half gear on his shoulder for four or five minutes while his helpers bolted the two sections together. During all this time, the cogs on the gear pressed against his back. It was an exceptionally strenuous lift and an unusual one in Mr. Barnes' employment with the appellant, as such heavy objects had theretofore been moved by a crane or block and tackle whenever it was possible to use them.

After Mr. Barnes had finished the lift, he made no complaint to his companions, nor did he appear to be in physical distress. It was near quitting time, and he did no more work that day. Upon arriving home, however, he complained to his wife and others of pains in his chest and in the region of his heart. He seemed to be short of breath and remarked, " 'My, I can't hardly navigate. . . . We were lifting so hard this afternoon.' " When he took off his shirt, the imprint of one of the gearcogs was plainly visible under his left shoulder blade. The next day, he still complained that "his heart was bothering him dreadfully." He "laid off work for that day and he decided he simply wouldn't try it," and, in the afternoon, went to see a physician. The physician, as a witness for the depart-

ment before a joint board examiner, subsequently testified regarding this call substantially as follows:

That Mr. Barnes had complained of having suffered sharp, severe pains through the chest and upper abdomen during the preceding month, especially when exercising after meals, but had made no mention of having sustained any strain or injury from lifting in the course of his employment; and that a physical examination of the workman had disclosed nothing conclusive other than abscessed teeth, there being at that time no symptoms of a coronary thrombus.

After he came home from the doctor's office, Mr. Barnes was weak and indisposed for the remainder of that day and through all of the next, which was Sunday. He stayed indoors most of the time, sitting down or reclining on a couch. On Monday morning, he went back to work, but complained to a fellow workman that he was short of breath and did not feel very well. After doing some comparatively light work for about half an hour, he had to sit down on a box to rest. Shortly thereafter, he collapsed and was sent to a hospital, where he died about eleven hours later.

A post-mortem examination was made by three physicians. One of them had attended the decedent at the hospital on Monday, and another had given him the office examination on the preceding Saturday. The autopsy disclosed that death had resulted from a thrombus, or blood clot, which completely occluded, or blocked, the right coronary artery, thus shutting off the blood supply from the muscles on one side of the heart. The autopsy physicians further found that the decedent had, for a considerable time, been afflicted with what is commonly called hardening of the arteries, which involved the blood vessels of the heart, the coronary arteries and their branches being extremely sclerotic, with marked narrowing of the lumina.

Four medical experts testified for the department, all being general practitioners. The two who participated in the post-mortem examination stated that the thrombus which they found in the coronary artery was a free clot, not adherent, and that it appeared to be fresh. They expressed the opinion that the clot had formed only a short time prior to the decedent's collapse on Monday morning, March 22nd; that exercise or exertion had not been a factor in its formation; and that it had not been caused by the strain which the decedent sustained in holding up the heavy gear casting on the afternoon of the 19th. The department's other two medical experts were generally in accord with this opinion, as were also two expert witnesses for the appellant, a physician in general practice and a specialist in diseases of the heart.

Two physicians, neither of whom was a specialist, testified as expert witnesses for the respondent. After having examined the autopsy report, each, in response to a hypothetical question, testified that, in his opinion, the unusual exertion of March 19th had been the cause of the workman's death. It was their conclusion that the strain of holding up the heavy weight had induced spasms of the coronary artery, which, in turn, precipitated the formation of the fatal thrombus. One of them, who had formerly been chief medical adviser for the department for a period of seven years, testified, in explanation of his conclusion, as follows:

"A. Few of these clots occur at the beginning of the attack. First in these coronary diseases there is a narrowing of the opening in the sclerosis of the walls of the vessels and then these vessels are subject to various attacks of so-called spasms, coronary spasms. Usually in these cases that result fatally there is a spasm of the coronary vessel with a closing up of the lumen and then a clot is formed afterwards which totally occludes this vessel. Now, the time after the

spasm that the clot may form is not a definite time and the time that a spasm may last is not definite. . . . Q. In your opinion do you believe there was spasm of the coronary vessels in this particular case? A. The history would indicate that there was a spasm following this violent exertion and the closure of the vessel was the cause of the sequence of events that produced his death."

Appellant took the deposition of a Seattle physician, who stated that he had practiced general surgery for seven years, had "more or less specialized in pathology for the past 4 years," and had performed approximately two hundred autopsies in cases of death resulting from coronary thrombosis. In answer to a comprehensive hypothetical question propounded by appellant's counsel, this expert expressed the unqualified opinion that the thrombus in the decedent's coronary artery had "formed at or about the time of his exertion on March 19th"; and that the exercise and exertion of lifting the gear had been a factor in causing the formation of the clot and had thereby contributed to the workman's death.

In view of the conflict in the opinions of the medical experts, the following excerpt from the testimony of appellant's pathologist is of particular significance:

"State whether or not, in your opinion, the formation of a thrombus, such as indicated, is more liable to come about during periods of exertion on the part of the subject or more liable to come about during periods of rest. A. Statistically more clots are found during rest, although in the light of recent researches on coronary occlusion it has been very definitely proven that the exciting factor at the point at which the occlusion occurs is almost invariably due to a minute rupture of capillaries within the coronary artery wall and that this rupture is produced by exertion or by excitement or any factor which temporarily suddenly increases the blood pressure."

Appellant vigorously contends that the coronary occlusion which brought about the decedent's death could not have been caused by the exertion on March 19th, as the autopsy disclosed that the blood clot was fresh and newly formed, and because the physician who examined the workman on the 20th had found no symptoms of a coronary thrombus.

Neither of the two factual premises on which appellant's contention rests is inconsistent with the theory of the respondent's medical experts that the lifting of the heavy weight had first induced a spasm of the coronary artery, which, in turn, by constricting the lumen of the vessel, after the lapse of an indefinite period of time, caused the formation of the thrombus. Furthermore, one of respondent's medical experts, the former chief medical adviser for the department, testified that the age of a blood clot can not be definitely determined by a post-mortem examination without a microscopic inspection to ascertain the cellular content of the clot (it does not appear that any such inspection was made in the case at bar). He also testified that it would be difficult, if not impossible, to fix the age of a blood clot within three or four days.

Appellant further maintains that, since the decedent's physical condition was such that, in any event, he had but a short time to live, the granting of compensation to his widow would, in effect, constitute an extension of the workmen's compensation act from its purpose of insuring employees against industrial accidents to embrace health insurance as well.

The workmen's compensation law was enacted in furtherance of sound public policy for the benefit of those who engage in extrahazardous employments. It applies to all alike, the young and the old, the weak and the strong, the healthy and the diseased. One of the hazards of employment to a workman afflicted

with disease is that his work may involve exertions and strains which his weakened constitution may be unable to withstand. An injury which a workman sustains in the course of his employment is compensable under the act if it results from any shock, strain, or exertion which he is then unable to endure in his condition of health, whatever that may be. *Frandila v. Department of Labor & Industries,* 137 Wash. 530, 243 Pac. 5; *Cole v. Department of Labor & Industries,* 137 Wash. 538, 243 Pac. 7; *Metcalf v. Department of Labor & Industries,* 168 Wash. 305, 11 P. (2d) 821; *McArthur v. Department of Labor & Industries,* 168 Wash. 405, 12 P. (2d) 418; *Smith v. Department of Labor & Industries,* 179 Wash. 501, 38 P. (2d) 212; *Daugherty v. Department of Labor & Industries,* 188 Wash. 626, 63 P. (2d) 434; *Bergagna v. Department of Labor & Industries,* 199 Wash. 263, 91 P. (2d) 551.

It is worthy of note that all the cases just cited, except the *Frandila* case and the *Cole* case, were decided after the statutory definition of the word "injury," as used in the workmen's compensation act as originally enacted, had been changed by amendment (Laws of 1927, chapter 310, p. 818, § 2) to its present form (Rem. Rev. Stat. (Sup.), § 7675 [P. C. § 3470], Laws of 1939, chapter 41, p. 121, § 2), namely:

"The word 'injury' as used in this act means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical condition as results therefrom."

In each of the above-cited cases which involved fatal accidents, there had been only a short interval of time, from a few minutes to several hours, after the shock or exertion which caused the injury until death ensued. In the case at bar, the interval was three days. The distinction is not material, however, if a causal

connection is definitely established between the exertion and the workman's death. *McKinnie v. Department of Labor & Industries,* 179 Wash. 245, 37 P. (2d) 218; *Devlin v. Department of Labor & Industries,* 194 Wash. 549, 78 P. (2d) 952.

■ In the instant case, the joint board, in effect, found that the decedent's exertion on March 19th was a material factor in causing the coronary thrombus which ended his life, and entered its order granting the respondent's application for a widow's pension. Under the provisions of Rem. Rev. Stat., § 7697 [P. C. § 3488], this decision of the department is *prima facie* correct, and the burden is upon the appellant to overcome it by evidence. *Zoff v. Department of Labor & Industries,* 174 Wash. 585, 25 P. (2d) 972; *Hoff v. Department of Labor & Industries,* 198 Wash. 257, 88 P. (2d) 419; *Cole v. Department of Labor & Industries,* 200 Wash. 296, 93 P. (2d) 413 (and cases therein cited).

It is true, as appellant points out, that the presumption has less force and effect where, as in the present case, the joint board did not have the witnesses before it, but had only transcripts of their testimony taken before examiners. *Cheney v. Department of Labor & Industries,* 175 Wash. 60, 26 P. (2d) 393; *Sweitzer v. Department of Labor & Industries,* 177 Wash. 28, 30 P. (2d) 980, 34 P. (2d) 350; *Peterson v. Department of Labor & Industries,* 178 Wash. 15, 33 P. (2d) 650; *Dry v. Department of Labor & Industries,* 180 Wash. 92, 39 P. (2d) 609.

This circumstance, however, affects the weight of the presumption rather than its validity. The statute which created it does not make any exception. The presumption has been recognized and applied where all the witnesses testified before examiners and none of the testimony was taken before the joint board.

*Ferguson v. Department of Labor & Industries,* 197
Wash. 524, 85 P. (2d) 1072, 90 P. (2d) 280.

Consideration of the evidence as above out-
lined impels the conclusion that the appellant has
failed to sustain the burden of proof imposed upon it
by the statutory presumption of the correctness of the
department's decision. The judgment is therefore af-
firmed.

BLAKE, C. J., STEINERT, BEALS, and JEFFERS, JJ.,
concur.

