[No. 74-40628-1.   Division One.   December 31, 1969.]
Panel 2

JOE SPINO, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*C. E. Austin* and *William J. Van Natter,* for appellant.

*Slade Gorton, Attorney General,* and *Joe Gordon, Jr., Assistant,* for respondent.

STAFFORD, J.—Joe Spino, the plaintiff, appeals from a judgment of the trial court that dimissed his appeal from the Board of Industrial Insurance Appeals. The trial court held there was insufficient evidence of unusual exertion to

support a causal relationship between plaintiff's employment and his subsequent cerebral hemorrhage or stroke.

A challenge to the sufficiency of plaintiff's evidence admits the truth thereof and all inferences that can reasonably be drawn therefrom. It requires the trial and appellate courts to interpret the evidence most strongly against the Department of Labor and Industries and most favorably for the plaintiff. *Warner v. Department of Labor & Indus.*, 68 Wn.2d 607, 414 P.2d 628 (1966); *Sawyer v. Department of Labor & Indus.*, 48 Wn.2d 761, 296 P.2d 706 (1956).

We accept the factual recitation contained in plaintiff's brief as the version he considers most favorable. With the few exceptions noted in brackets, the department also accepts these facts.

> The plaintiff . . . a cement finisher [cement mason], was employed on December 2, 1964, operating a bull float while standing in 18 inches of water and cement [water and mud, not cement] . . . when he fell on his left side. . . . He had no trouble at that time . . . but later in the day started having difficulty with his left knee and arm with kind of a burning sensation . . . He worked until December 11, 1964 . . . later saw a physician who x-rayed him and rendered physical therapy . . . and recommended he return to work . . . The plaintiff, feeling he could not return to work, changed to another doctor . . . Dr. Kenneth Martin a certified orthopedist, who examined him first on July 2, 1965 . . . Dr. Martin received a history that the plaintiff had become progressively more disabled following his injury . . . and ultimately concluded that the plaintiff was suffering from the residuals of a stroke involving the muscles and nerves of the left arm and leg . . . Dr. Martin referred the plaintiff to a neurologist who confirmed the presence of a *stroke or cerebral vascular accident*, causing his trouble . . .

> Dr. Martin testified that the plaintiff's work in a situation that required straining effort in a slightly bent over position, with his blood pressure and his fragile blood vessels at his age, increased the pressure within his abdomen and chest as the plaintiff heaved, causing something to give, leading to the fall . . . *Dr. Martin further felt that at the time this happened the plaintiff was doing*

*nothing beyond his normal occupational duties* . . . and stated that "it is a vascular problem in the fact that it is 'a hemorrhage that causes the change but it doesn't have any relationship to the heart" . . .

All the medical evidence indicates the plaintiff had a stroke and is totally disabled . . .

The plaintiff testified that he was walking in 16 to 18 inches of water and mud . . . doing work harder than he had ever done . . . The employer testified this was high early strength cement which sets up fast; is a little more sticky than ordinary cement . . . and is not used by every contractor because it costs a couple of dollars a yard more . . .

(Italics ours.)

Plaintiff assigns error to the trial court's granting of the department's motion to dismiss the action and in entering the order of dismissal. The first two assignments of error are not argued. It is merely urged that they are well taken if either assignment of error No. 3 or No. 4 is valid.

Assignments of error Nos. 3 and 4 claim the trial court erred:

3. In ruling that unusual exertion is a necessary element of an industrial injury involving a cerebral hemorrhage.

4. In ruling that the certified appeal board record contained insufficient properly admissible evidence to sustain a finding that there had been unusual exertion by the plaintiff.

Assignment of error No. 4 is neither supported by argument nor by citation of authority. An assignment of error which is not argued in the brief is deemed to have been abandoned. *Erdmann v. Henderson,* 50 Wn.2d 296, 311 P.2d 423 (1957); *Winslow v. Mell,* 48 Wn.2d 581, 295 P.2d 319 (1956). Assignment of error No. 4 is thus not properly before us for review. CAROA 42; *Verstraelen v. Kellog,* 60 Wn.2d 115, 372 P.2d 543 (1962); *Obde v. Schlemeyer,* 56 Wn.2d 449, 353 P.2d 672 (1960).

Plaintiff's argument of the assignment of error No. 3 asserts that stroke cases (*e.g.* cerebral hemorrhages) should not be controlled by the "unusual exertion" rule

applied to heart cases by *Windust v. Department of Labor & Indus.*, 52 Wn.2d 33, 323 P.2d 241 (1958). According to plaintiff the basic inquiry in cerebral hemorrhage cases should be whether *exertion* on the job (even if minor and usual) caused the vascular breakdown, not whether the exertion was *unusual.*

Plaintiff contends an overwhelming number of jurisdictions support his position. Nevertheless, the citation of cases from foreign jurisdictions and articles based thereon are of little assistance. We are concerned with a unique definition of "injury" found in the Washington workmen's compensation statute, RCW 51.08.100:

> "Injury" means a *sudden* and *tangible* happening, of a *traumatic* nature, producing an immediate or prompt result, and *occurring from without,* and such physical conditions as result therefrom.

(Italics ours.)

■ The statute provides an objective test by which it is necessary to relate the injury to some identifiable happening, event, cause or occurrence capable of being fixed at some point in time and connected with the employment. An injury must be more than a "fortuitous event" previously authorized by Laws of 1911, ch. 74, § 3, p. 346.

■ Plaintiff urges that *Metcalf v. Department of Labor & Indus.*, 168 Wash. 305, 11 P.2d 821 (1932) (a stroke case) supports the theory that unusual exertion is not a necessary element of an industrial injury involving a stroke. We do not agree. To so hold would require us to isolate the comments of the court from the facts of the case. This we may not do.

In *Metcalf* the workman suffered a stroke while performing work too strenuous for his aging vascular system. This is not to say, however, that he prevailed simply because mere exertion (as distinguished from *unusual* exertion) was sufficient. The court did not hold it was unnecessary to establish unusual exertion. In fact in *Metcalf* at 308 the court commented:

In the case at bar, there was evidence that Mr. Metcalf collapsed when he was sawing a log, between one and two o'clock in the afternoon of a hot day. The log that he was sawing lay so that he had to work in an *unusual position* with one knee on the ground. A man was waiting to use the road which the log blocked. The log was pinching the saw, requiring *more than ordinary exertion* for the sawing. Mr. Metcalf was working much *faster than is customary* for a man sawing logs when he fell unconscious. He died from a cerebral hemorrhage caused by a bursting blood vessel.

(Italics ours). The court went on to hold that the "more than ordinary exertion" (also denominated as "violent") satisfied the *statutory requirement* for an injury.

The case involved positive evidence of unusual exertion with death resulting immediately. *O'Toole v. Department of Labor & Indus.*, 182 Wash. 202, 46 P.2d 388 (1935). Rather than supporting plaintiff's position, *Metcalf* demonstrates the court's awareness of both the *nature* and the *amount* of exertion required to produce the injury.

According to plaintiff the heart cases, which rely on *Metcalf*, were not overruled by *Windust*. This, he suggests, lends weight to his theory. We disagree. Despite loose language contained in some of the cases, the fact-pattern of each indicates the presence of unusual exertion or some abnormal strain to which the resultant injury could be attributed.[1] Thus, there was no need to overrule the cited cases because they did not directly violate *Windust*.. However, the heart cases that did depart from Metcalf's early basic view, and which followed the rule of *McCormick*

---

[1] *McKinnie v. Department of Labor & Indus.*, 179 Wash. 245, 37 P.2d 218 (1934) (overruled on other grounds, *Hutchings v. Department of Labor & Indus.*, 24 Wn.2d 711, 167 P.2d 444 (1946)); *Smith v. Department of Labor & Indus.*, 179 Wash. 501, 38 P.2d 212 (1934); *Devlin v. Department of Labor & Indus.*, 194 Wash. 549, 78 P.2d 952 (1938) (overruled on other grounds by *Hutchings v. Department of Labor & Indus., supra*); *Barnes v. Department of Labor & Indus.*, 6 Wn.2d 155, 106 P.2d 1069 (1940).

*Lumber Co. v. Department of Labor & Indus.,* 7 Wn.2d 40, 108 P.2d 807 (1941), were overruled by *Windust.*

It should also be noted that the cases which have relied upon *Metcalf* (other than nondegenerative heart cases) uniformly have found evidence of a sudden tangible happening of a traumatic nature[2] or the exertion of great force or unusual strain[3] to establish an industrial injury.

In short, *Metcalf* does not support plaintiff's position. The critical issue was and continues to be existence of an unusual exertion necessary to place the injurious result within the ambit of "a sudden and tangible happening, of a traumatic nature" required by RCW 51.08.100.

Plaintiff also argues that *Boeing Co. v. Fine,* 65 Wn.2d 169, 396 P.2d 145 (1964) rejects *Windust* in all cases of "bodily failure" except those involving the heart. He urges that under *Boeing* the only inquiry is whether the exertion required by the employment caused the bodily failure, not whether the exertion was unusual. Plaintiff's application is too broad. *Boeing* did not purport to include all "bodily failures" or "breakage" other than heart problems. Its own language limited the case to application of force to the "skeletal" or "mechanical" structures of the body. *Boeing* recognized a material difference between that type of problem and problems of aging represented by the progressive degenerative heart condition found in *Windust.*

The court in *Boeing* explained the difference as follows:

The fundamental differences between heart attacks and back injuries are such as to render the "unusual exertion" test irrelevant when transplanted into the area of the law dealing with injuries to the *skeletal structure of the body, in particular the back.* A heart attack, under currently persuasive medical theory, is largely related to *long-term disease, and may be unrelated to the particular employment hazard* to which the work may be subjected. Thus, the thought that a heart attack *suffered during accustomed exertion is really happenstance* as to time

[2] *Daugherty v. Department of Labor & Indus.,* 188 Wash. 626, 63 P.2d 434 (1936).

[3] *McArthur v. Department of Labor & Indus.,* 168 Wash. 405, 12 P.2d 418 (1932).

and place is *exemplified in the approach of* . . . *Windust.* Contrast this to injuries of the back. It is quite possible that a slight or usual strain applied at an *unusually different angle* could, through the forces of levers, . . . overpower and injure a normal back. Thus, the *unusual strain* requirement of the *Windust* case does not apply to injuries to *mechanical structures* to which the angle of application of the force may be vastly more important than the general level of strain.

(Italics ours.) (Footnote omitted.)

The foregoing clearly distinguishes *Boeing* from the instant case. In this case, as in *Metcalf* and *Windust*, the workman suffered from a long-term disease, a progressive hardening of the arteries or arteriosclerosis, unrelated to the particular employment hazard to which the workman was subjected. It was necessary to apply the "unusual exertion" rule of *Windust* to determine whether the stroke suffered during accustomed exertion of employment was more than happenstance as to the time and place. Assignment of error No. 3 is not well taken. The holding of this case is limited, however, to cerebral vascular accidents or strokes which the medical testimony in this case attributed to a progressive deterioration of the cerebral vascular structure.

Plaintiff has failed to prevail in either assignment of error No. 3 or No. 4. Thus, assignments of error Nos. 1 and 2, based thereon, must fall. The latter two assignments of error were not supported by argument or citation of authority. They will not be considered further. CAROA 42; *Verstraelen v. Kellog, supra; Obde v. Schlemeyer, supra.*

The trial court is affirmed.

HOROWITZ, A. C. J., and UTTER, J., concur.

---

Petition for rehearing denied January 28, 1970.