[No. 24758. Department One. January 3, 1934.]

J. A. MECARTEA, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Browder Brown, Assistant*, for appellant.

*Warren J. Gilbert* and *Richard F. Schacht*, for respondent.

MITCHELL, J.—J. A. Mecartea, about sixty-eight years of age, while engaged in extrahazardous employment, received an injury on September 20, 1929, caused by a small piece of steel penetrating the flesh of his right knee, followed by blood poisoning, which necessitated an incision or operation on October 3, 1929, to evacuate pus that had formed about and below the knee.

The department of labor and industries recognized his claim and carried him on time loss for more than two years, furnishing hospital and medical treatment. He received considerable care and attention, including

[1]Reported in 28 P. (2d) 257.

two personal examinations by the chief medical examiner of the department, upon which, in connection with written reports from other doctors, the claim was closed on February 9, 1932, with an award of twenty degrees permanent partial disability. The claimant, being dissatisfied, applied to the joint board of the department for a rehearing, alleging that, as a result of the injuries, his right leg was permanently totally disabled and the sight of both eyes so impaired that he will never be able to use them in any gainful occupation. The application for a rehearing was granted. Hearings were had, and witnesses examined and cross-examined, the testimony being transcribed and filed in the cause in the department.

By order of the department, several specialists made personal examination of the claimant and filed written reports thereon. Upon consideration of the whole record, the joint board found that the claimant's impaired eyesight was in no way caused by the accidental injuries he had received, but was due solely to his advanced age; and further found that the award of twenty degrees permanent partial disability fixed by the supervisor in closing the claim was ample, and entered an order sustaining and approving it. The claimant appealed to the superior court, where, upon a non-jury trial upon the certified record from the department, findings were made in favor of the claimant upon which judgment was entered, awarding the claimant forty degrees permanent partial disability. The department of labor and industries has appealed.

The case is more largely one of facts. The testimony of those who spoke of the condition of the respondent's eyesight will not be reviewed here because the judgment of the superior court in no way depends upon that testimony, as appears from a finding of the superior court,

" . . . that the lowering of resistance in the body of the claimant, which must have been caused by general blood poisoning following the injury, had no bearing upon the condition of the claimant's eyes, and for that reason the condition of his eyes is not taken into consideration in these findings of fact and conclusions of law."

The record in this case, which has been duly certified by the judge of the superior court as a statement of facts, is rather voluminous, but a fair summary of it for the purposes of our decision may be given. Respondent worked for one Bert Robinson at the time he was injured. His employer testified that, prior to the accident, the respondent worked as a blacksmith, saying: "Well, we don't do any heavy work. It is all light work." The respondent, testifying in his own behalf at the hearing three years after he was injured, stated that his right knee was weak and painful when he walked on it; that he could not walk more than two blocks without the help of a cane; that he did not have complete control of the knee joint; that it "buckles back on me if I make a misstep;" and that he had not sought employment because not able to work.

Dr. George Shorkley, who treated the respondent professionally and who operated on the leg on October 3, 1929, testified for the respondent that the wound healed after the operation before he left the hospital about November 9, 1929; "Q. At which time the infection had completely left the system and the leg healed? A. Yes, sir;" that he will not be able to walk without a cane or crutch; that he is unable to work at anything that requires him to stand on his feet; that, although the knee had healed, there had been shrinkage in the tissue that weakened it, and his ability to extend the right knee is slightly limited; that the point at which the respondent complained of pain was on the outside of the knee joint, and, being asked if "from an exami-

nation of X-rays or physical examination he could determine what caused the pain at that point," answered: "No, sir." His opinion was that the right knee or leg was one hundred per cent permanently disabled.

Dr. George Boynton, called by the respondent, testified that he had seen the respondent, but not professionally, prior to a physical examination of him the day he testified at the hearing; that the condition of the respondent was good, except the right leg, the active motion of which is about fifty per cent and the passive motion about seventy-five per cent; that the knee joint itself is reasonably normal for a man of his years; the right knee seems smaller than the other one, and the patella reflexes are very much diminished; and that the disability of the right knee is at least fifty per cent, "as he is now."

Dr. L. P. McCalla made a special examination of the respondent on March 4, 1930, and Dr. W. W. Ballaine made one on May 16, 1930, and thereafter they made a joint examination of the respondent by order of the department on June 4, 1932, with respect to which they signed and filed a written report, which, after referring to their former separate examinations of the respondent, stated as follows:

"Since those examinations were made the claimant has received no special treatment, tho there has been a marked and decided improvement in the condition of his right knee and leg. The muscles, both above and below the knee, are now firm and well nourished. When the claimant's attention is diverted both flexion and extension are normal and are produced without any apparent pain. There is a small scar over the knee cap, otherwise the leg appears normal.

"The left leg—the one not injured—is slightly enlarged, due to varicose veins.

"X-rays were taken of both knees for comparison. The films and report are attached hereto and made a part of this report. The right knee can be said to be

normal from an x-ray standpoint with the exception of slight hypertrophic change. This, however, is not inconsistent with the claimant's age.

"The left knee—the one not injured—has marked and advanced hypertrophic change. This knee is in far worse condition than the right. . . .

"(1) This claimant needs no treatment as the result of his injury.

"(2) Yes, his condition is fixed and he is able to do any work consistent with his age.

"(3) The 20 degrees he has already received for his P. P. D. is ample, and was a generous award.

"W. W. Ballaine, M. D.
"L. P. McCalla, M. D."

At the hearing a few weeks after the report was made, Dr. McCalla testified in detail of respondent's condition confirmatory of his former written report; and Dr. Ballaine at the same hearing did likewise. More specifically, in some respects, Dr. Ballaine testified:

"Q. From a physical examination of the right knee, what did you conclude? A. I think his right leg is in better condition than his left. The muscles in his legs are hard and well nourished and I don't believe there is one particle of stiffness. If there is, it is so very slight, mind you I mean in a man seventy years of age, consistent with his age, his right leg is normal or nearly so. His left leg is a little larger than his right. I think it is due to varicose veins. Q. What would you say as to the stability of the right knee? A. I think he has an excellent knee. . . . Q. If he says if he steps on it, it will completely buckle on him, and he will fall, you think that is not a fact? A. Any leg is liable to buckle. I want to say that leg is as near perfect for a man aged 70—your leg may buckle or my leg may, or a sixteen year old boy's may buckle, but I will say Mr. Mecartea's leg is normal for a man of his age."

The operator who took the X-rays testified that he made pictures of both knees; that each showed at the

border of the patella a bony deposit that may be spoken of as calcium bone, callous deposit, which was worse in the left knee. These X-ray pictures are the ones frequently referred to in the testimony and other records in the case.

As already stated, the chief medical examiner of the department made two physical examinations of the respondent at widely separated periods of time, upon which written reports were made and filed, that were taken into consideration by the department at the time the final award was made.

■ The effective provisions of law are statutory, and, as bearing upon this case at the present time, are as follows: Rem. Rev. Stat., § 7697, Laws of 1931, ch. 90, p. 263, § 1, which provides that an applicant may appeal to the superior court from the order of the joint board, and that "on such appeal the hearing shall be *de novo*."

The same section further provides: "Appeals shall lie from judgment of the superior court as in other civil actions." As to appeals generally to the supreme court, Rem. Rev. Stat., § 1736, provides:

" . . . in actions legal or equitable, tried by the court below without a jury, wherein a statement of facts or bill of exceptions shall have been certified, the evidence of facts shown by such bill of exceptions or statement of facts shall be examined by the supreme court *de novo*."

So that the trial in such cases in both the superior court, no jury being had, and in the supreme court is *de novo*. The same section of the workmen's compensation act, just mentioned, qualifies or regulates all such *de novo* hearings in both courts by providing that:

"In all court proceedings under or pursuant to this act the decision of the department shall be *prima facie*

correct and the burden of proof shall be upon the party attacking the same."

Trying the case in that manner in this court and upon consideration of all the evidence as submitted by the statement of facts, our conclusion and decision is that the *prima facie* correctness of the decision of the joint board has not been overcome.

Reversed and remanded, with directions to the superior court to enter judgment confirming and approving the order of the joint board.

BEALS, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.