[No. 26031. *En Banc.* December 30, 1936.]

GEORGE ZANKICH, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *J. A. Kavaney, Assistant* (*W. H. Abel,* of counsel), for appellant.

*L. B. Donley,* for respondent.

STEINERT, J.—This is an appeal from a judgment of the superior court reversing an order of the joint board of the department of labor and industries and directing the department to reclassify a workman's claim for compensation as one of total and permanent disability.

The respondent workman was, at the time of receiving the injury complained of, about fifty-seven years of age. He had been employed for many years as a

[1]Reported in 63 P. (2d) 427.

bucker in various logging camps in western Washington. On May 13, 1932, he was working as a fireman for Schafer Bros. Logging Company at its camp near Aberdeen. His claim is that, while splitting wood for the purpose of firing a donkey engine, he sustained an injury which later proved to be a fracture of the seventh cervical and first dorsal spinous processes of his back.

According to the initial report filed by respondent, he "was lifting a plank on donkey when a sharp pain was felt in back of neck." According to his testimony before the joint board, he was throwing a heavy block, and, while bending over, something hit him in the upper part of his back between the shoulders. He did not see the object that struck him and did not know what it was. There were no eye witnesses to the accident. Respondent continued at his work during the remainder of that day and most of the next, although suffering considerable pain and discomfort.

On the day following the occurrence, respondent was given a ticket by the foreman of the company and was directed to go to a physician in Aberdeen who, at that time, was the chief medical adviser of the department. Examination by the physician did not reveal any external evidence of injury. However, the respondent was sent to a hospital in Aberdeen, where an X-ray picture was taken, which showed the fracture above referred to. A few days later, the physician performed an operation in which a shallow incision about three inches in length was made in respondent's back, and the tip of the spinous process was removed. Respondent remained in the hospital thirteen days and then went out to a farm, where he endeavored to work, but, according to his testimony, was unable to do so.

The department allowed respondent's claim for compensation by providing immediate medical aid

and also time loss. After a subsequent investigation by the department, the claim was finally closed on January 6, 1933, with the allowance of four months' and fourteen days' time loss and one degree permanent partial disability. Thereupon, an appeal was taken by the claimant to the joint board, and hearings were had upon successive occasions and after repeated investigations and examinations, continuing up to November 16, 1934, when the joint board entered its final order sustaining the order of the department closing the claim. From that order, an appeal was taken by the claimant to the superior court, where the cause was heard solely upon the certified record of the department, without any additional evidence being taken.

After consideration of the record and argument of counsel, the court made findings to the effect that the claimant had sustained a total and permanent disability as the direct result of a fracture of the process of one of the vertebrae. From such findings, the court concluded that the order of the joint board should be reversed and the department directed to reclassify the claimant as being totally and permanently disabled, to be compensated accordingly. A decree was entered in accordance with the court's findings and conclusions. Thereupon, the department appealed to this court.

The question before us is wholly a question of fact. The record is a voluminous one, consisting of the preliminary correspondence and reports of the department and culminating in the testimony taken before the joint board. In addition to the respondent himself, there were four lay witnesses and four physicians who testified in his behalf; for the appellant department, there were two lay witnesses and ten physicians who testified. In the total number of physicians were included many specialists, called from Tacoma, Seattle, and Aberdeen. The number and extent of per-

sonal examinations made of the respondent, the length of time consumed in the various investigations and examinations and in the many hearings before the joint board, and the detail to which the expert testimony went, amply demonstrate that the question of the nature and extent of respondent's injury was fully investigated and considered by the persons upon whom that responsibility lay, before the final order of the joint board was made. Time and space will not permit us to detail the evidence to any great extent. We limit ourselves to its substance.

Respondent's contention, and the evidence in support thereof, was to the effect that, prior to his injury, he was in good physical condition; that, shortly after the accident, his eyes became red and blue and were swollen; that he had lost sleep and weight and suffered much pain on moving or bending; that the operative scar on his back had formed scar tissue affecting the muscles, ligaments, and nerves, resulting in a stiffness of the back, marked limitation of motion of the arms, and some muscular spasm; that his vision had been reduced to twenty sixty-fifths of normal, caused by optic atrophy, which was found to be progressive; that the auditory nerve had been affected and that the condition would become progressively worse; that the respondent would probably become totally blind and would lose all useful hearing; that he was presently disabled to the extent of eighty to eighty-five per cent; and that he would be unable to follow any gainful occupation.

Appellant's evidence was emphatically to the contrary. Its lay witnesses to some extent impeached the testimony of respondent's lay witnesses. Among appellant's expert witnesses were specialists in various lines. Their testimony, after close personal examination and study of the respondent, was, in sub-

stance, that, while he had an impairment of vision to a certain degree and an impairment of hearing to a lesser degree, and some limitation of motion of the arms, none of these manifestations were attributable to the injury to the spinous processes or to the operation; that there was no atrophy of the optic nerve, and that the defect in hearing was due to a previous chronic catarrhal condition.

The physician who saw the respondent the day after the accident testified that there was not only no evidence of external injury to respondent's back, but that there was no discoloration of his eyes and not even any complaint by the respondent as to anything except the pain between the shoulder blades; that respondent had denied that he had been struck by anything, but attributed his injury to a strain resulting from lifting; that any injury which respondent might have sustained to the particular vertebra could not involve the nerves to his arms; and that the witness had later examined respondent for a fraternal insurance order and then found that there had been no change in his condition.

Another physician, a general practitioner and surgeon, testified that there was no evidence of any industrial accident and that his examination of respondent revealed no irregularity in the spinous processes and no ankylosis in the particular segment.

A commission of seven specialists made a careful examination of respondent over a period of several hours. Their testimony is susceptible of no other conclusion, in our opinion, than that neither the injury which respondent claims to have sustained to the spinous processes, nor the subsequent operation, caused, or could possibly have caused, the ailments of which respondent complains. Their testimony is also strongly suggestive either of a malingering on the

part of respondent or else of a wilful exaggeration by him. They testified that, during the examination of respondent, they found that he was easily able to walk about a room wherein the furniture had been purposely arranged in a cluttered condition, and that, if his vision had been as poor as he then claimed that it was, he could not have avoided colliding with the chairs or tables; that his movements in undressing were obviously forced when he was conscious of being observed but at other times were performed with normal ability; that, in testing the mobility of respondent's shoulders and arms, it was apparent that he was feigning rigidity; that, although he insisted that he could not place his hands upon his hips, they found that he had his purse and glasses in his hip pockets; that, when testing his grip, he showed a voluntary restraint; that, although he complained of loss of use of his arms, they found that his hands were calloused, this at an examination which was held two years after the alleged accident; that, although he had a great deal of muscular spasm, it was, to some extent at least, apparently voluntary. These witnesses testified, in conclusion, that respondent was not prevented from engaging in a gainful occupation, and that any disability which respondent may then have had was not the result of any injury to the spinous process or of the operation. We mention these particular details, not for the purpose of declaring that respondent was wilfully malingering, but rather to show the nature and difficulty of the problem which the joint board had to consider and pass upon.

In all court proceedings under, or pursuant to, the workmen's compensation act, the decision of the department is to be considered to be *prima facie* correct, and the burden of proof is on the party attacking

the same. Rem. Rev. Stat., § 7697 [P. C. § 3488]; *Mecartea v. Department of Labor & Industries,* 176 Wash. 27, 28 P. (2d) 257; *O'Toole v. Department of Labor & Industries,* 182 Wash. 202, 46 P. (2d) 388; *Carter v. Department of Labor & Industries,* 183 Wash. 86, 48 P. (2d) 623.

In reiterating this rule, we are mindful of our recent decisions holding that the decision of the department does not have the same presumptive effect when the testimony is taken before an examiner and a transcript thereof submitted to the joint board, as it does when the testimony is taken before one or more members of the board. *Cheney v. Department of Labor & Industries,* 175 Wash. 60, 26 P. (2d) 393; *Sweitzer v. Department of Labor & Industries* (on rehearing), 177 Wash. 28, 36, 30 P. (2d) 980, 34 P. (2d) 350; *Peterson v. Department of Labor & Industries,* 178 Wash. 15, 33 P. (2d) 650; *Dry v. Department of Labor & Industries,* 180 Wash. 92, 39 P. (2d) 609; *Rikstad v. Department of Labor & Industries,* 180 Wash. 591, 41 P. (2d) 391. These same cases, however, also hold that, when the testimony is taken before an examiner, neither the joint board *nor the trial court* is in any better position to weigh and consider the testimony than is this court; and, further, that, on appeal to this court, the cause is to be heard *de novo.*

Even though there is a limitation upon the presumptive effect of the department's decision, under the circumstance just mentioned, the presumption still obtains to the extent that the burden is upon the party attacking the decision, and he must show by the preponderance of the evidence that the decision is incorrect. Furthermore, a contrary decision by the trial court, upon the admitted record, without additional testimony, does not of itself destroy the presumptive effect of the department's decision. The cause comes

to us to be tried *de novo* with the same presumption attaching here as attached before the trial court, and the burden of proof still rests upon the party attacking the decision of the department.

We have carefully read and considered the record and are of the opinion, not only that respondent's evidence does not preponderate over that of the appellant, but that the preponderance of the evidence clearly supports the decision of the department.

Reversed, with direction to the trial court to affirm the order of the joint board.

MAIN, MITCHELL, TOLMAN, BEALS, and BLAKE, JJ., concur.

GERAGHTY, J., concurs in the result.

MILLARD, C. J. (dissenting)—I am convinced from my examination of the record that the evidence clearly preponderates in favor of respondent.

HOLCOMB, J., concurs with MILLARD, C. J.