[No. 27235.  *En Banc.*  March 16, 1939.]

LEONARD HOFF, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Defendant,* WASHINGTON VENEER COMPANY, *Appellant.*[1]

[1]Reported in 88 P. (2d) 419.

*Thos. L. O'Leary,* for appellant.

*Harry Ellsworth Foster,* for respondent.

*The Attorney General* and *J. A. Kavaney, Assistant,* for defendant.

*L. B. Donley, amicus curiae.*

STEINERT, J.—From a judgment of the superior court reversing an order of the joint board of the department of labor and industries with respect to a claim of an injured workman, the department and the employer of the injured claimant took separate appeals. Subsequently, on motion of the workman, the

appeal of the department was dismissed, and the case has since proceeded on the appeal of the employer.

In April, 1931, respondent sustained an injury to his left leg, in consequence of which the leg was amputated below the knee. That injury, for which a claim was filed and, in January, 1933, was closed, is not involved in the present action.

On February 2, 1935, while respondent was engaged as a clipper spotter in the employ of appellant, a veneer slab fell upon and injured his right foot at a point just below the ankle. Respondent returned to work on March 3, 1935, and ten days later his claim for compensation for that injury was closed by the department with an allowance of twenty-six days' time loss.

In the fall of 1935, running sores developed along the bottom and sides of the stump of respondent's left leg, but he continued to work until April, 1936, at which time his right foot, which had been injured on February 2, 1935, became so swollen that he could not put on his shoe. In May, a small pimple made its appearance at the base of the big toe, and the surrounding area, becoming infected, developed an ulcer about the size of a quarter.

Respondent made application to the department to have his claim of 1935 reopened on the ground that his condition, resulting from the accident of February of that year, had become aggravated since the closing of the claim. The application was denied for the assigned reason that respondent's existing condition was not attributable to the 1935 injury. Respondent then appealed to the superior court, where trial was had before a jury solely on the departmental record. Upon a verdict in favor of respondent, judgment was entered reversing the order of the department. Thereupon, this appeal was taken by the employer.

Respondent opens his brief with a motion to

dismiss the appeal now pending, on the ground that the employer did not formally intervene in the cause below and is, therefore, not a party to the record.

By recent decisions of this court, construing Rem. Rev. Stat., § 7697 [P. C. § 3488], it is settled that an employer has a right of appeal to the courts in industrial insurance cases. *Mud Bay Logging Co. v. Department of Labor & Industries,* 189 Wash. 285, 64 P. (2d) 1054; *State ex rel. Winningham v. Olinger,* 190 Wash. 697, 70 P. (2d) 317; *State ex rel. Crabb v. Olinger,* 191 Wash. 534, 71 P. (2d) 545; *Mud Bay Logging Co. v. Department of Labor & Industries* (on rehearing), 193 Wash. 275, 75 P. (2d) 579; *State ex rel. Hills v. Olinger,* 193 Wash. 365, 75 P. (2d) 926.

Rem. Rev. Stat., § 7697, cited above, relates to rehearings before the joint board and appeals to the courts, and specifically provides that such proceedings shall be informal and summary, with full opportunity to be heard. The act as a whole, of which that section is a part, reflects the intention of the legislature to provide a method of disposing of industrial insurance cases with as little technical formality as possible.

The record in this case discloses that the employer appeared at the various times when, pursuant to the order of the joint board, the testimony of the several witnesses was taken; that it participated in the hearings before that body and also at the trial before the superior court; and that it subsequently gave notice of appeal to this court. The employer was at all times an interested and active party. Under the statute, as we construe it, the employer had the unqualified right to participate in the proceedings before the joint board and in the superior court, and was not required to seek that right by plea in intervention. From an adverse judgment in the trial court, it likewise had an unqualified right to appeal to this court

without a formal attempt to intervene. The motion to dismiss the appeal is denied.

Upon the merits of the case, the question presented is whether the evidence preponderates against the decision of the joint board which found that respondent's condition was not the proximate result, nor an aggravation, of the injury of February 2, 1935.

The decision of the industrial insurance department upon matters arising under the workmen's compensation act is *prima facie* correct, and the burden of showing the contrary rests upon the party attacking such decision. Rem. Rev. Stat., § 7697; *Boyer v. Department of Labor & Industries,* 160 Wash. 557, 295 Pac. 737; *Mecartea v. Department of Labor & Industries,* 176 Wash. 27, 28 P. (2d) 257; *Zankich v. Department of Labor & Industries,* 189 Wash. 25, 63 P. (2d) 427; *Nilsen v. Department of Labor & Industries,* 194 Wash. 97, 77 P. (2d) 593.

The verdict of the jury in such cases is not controlling upon the court, but merely advisory to it. In the final analysis, it is the function and duty of the court itself to determine whether the department has acted within its powers and has correctly construed the law and found the facts. *Hodgen v. Department of Labor & Industries,* 194 Wash. 541, 78 P. (2d) 949; *Devlin v. Department of Labor & Industries,* 194 Wash. 549, 78 P. (2d) 952; *Russell v. Department of Labor & Industries,* 194 Wash. 565, 78 P. (2d) 960; *Schraum v. Department of Labor & Industries,* 197 Wash. 336, 85 P. (2d) 262.

On appeal from a decision of the department to the superior court, and, likewise on appeal from the superior court to this court, the hearing is *de novo. Hodgen v. Department of Labor & Industries,* 194 Wash. 541, 78 P. (2d) 949, and cases therein cited; *Cooper v. Department of Labor & Industries,* 195

Wash. 315, 80 P. (2d) 830; *Langford v. Department of Labor & Industries*, 195 Wash. 412, 81 P. (2d) 277.

Having in mind the rules just stated, we will consider the evidence upon the issues, which are purely factual, namely, (1) the nature of respondent's ailment, and (2) whether or not there was any causal connection between the injury of February 2, 1935, and respondent's condition at the time of the hearing. It should be stated here that no recovery is presently sought, or could be had, for any aggravation of the 1931 injury. That injury was to respondent's left leg, and any further recovery thereon would now be barred by Rem. Rev. Stat., § 7679 (h). The injury involved in this proceeding was to respondent's right foot.

The testimony of respondent and two other lay witnesses was to the effect that, prior to the injury of February, 1935, respondent had never had any trouble with his right foot, but that, at various times after March, the foot was considerably swollen and, in April, 1936, was swollen to such an extent that he could not put on his shoe.

However, the factual questions here involved are of such nature that their determination must depend primarily upon the testimony of medical witnesses.

Seven physicians and surgeons testified in the case. Two of them were called by respondent, five by appellant. It should be noted that none of these witnesses attended or examined respondent for his present ailment prior to April, 1936, which was fourteen months after the injury complained of herein.

Respondent's principal witness was a physician whose experience was not shown, but whose qualifications are nowise disputed. He had been consulted at the time of respondent's injury in 1931, but, so far as it here appears, he did not treat respondent at that

time. He did, however, attend respondent for his present ailment from sometime in the spring of 1936 to the time of the hearing before the joint board. He testified that respondent had a congenital defect of the lymphatic system; that the lymphatics were unable to handle the most trivial infection; and that the injury of February 2, 1935, lighted up and aggravated that condition.

Respondent's other expert witness had practiced general surgery for twenty-six years, had for seven years been chief medical adviser of the industrial insurance department, and had gained a wide experience in orthopedic surgery. He, however, saw respondent but once. He testified that, after consulting with the first physician witness above referred to, he made an examination of respondent, but found nothing to support the statement or theory of the prior witness. He stated that, in his opinion, respondent was suffering from an extreme degree of flat-foot and an inflammatory condition of the arch. He attributed the condition to the greater stress put upon the right leg because of the loss of the left leg. He further stated that an object of some weight falling on the right foot *would tend* to aggravate and precipitate a change in the structures and thus produce a flattening of the arch to a greater extent than existed before. Upon cross-examination, he admitted that he had made no inquiry as to whether respondent had flat-foot prior to the time of the 1935 injury; that he knew nothing whatever about the condition of respondent's left leg; that, in his examination of respondent on October 7, 1936, he found no evidence of any swelling in the right foot; and that he could not say that respondent's flat-footedness had been occasioned by a weight falling upon the foot.

It will thus be seen that these two physicians dif-

fered radically in their theories as to respondent's present ailment, and that only one of them testified positively that there was a causal connection between the injury of February 2, 1935, and respondent's present condition.

The five physicians and surgeons called by appellant were practically in agreement as to the nature of respondent's ailment, and four of them, being interrogated as to any causal connection between the 1935 injury and respondent's existing condition, testified that there was none.

Appellant's first witness had been in general practice since 1934. He treated respondent from April 22, 1936, to May 17th of the same year. He testified that, when he first saw respondent, there was an infected area over the stump of respondent's left leg, but no infection of the right foot. The condition was originally diagnosed by him as impetigo and treated accordingly. At first, the patient responded favorably, but after several days he exhibited a marked temperature and complained of severe pain in the right foot, which had, in the meantime, become swollen. An infected area was then discovered at the base of the big toe of the right foot. X-ray pictures were taken, but these revealed no bony pathology. Diathermy was used for a day or two, and then the impetigo treatments were resumed. The patient improved until May 17th, when he was discharged from the hospital. The witness told the respondent at that time that, as a physician, he could do nothing more for him except to prescribe rest. The witness testified that his final diagnosis of respondent's condition was impetigo and thrombophlebitis, and he stated categorically that there was no causal connection between the injury of 1935 and respondent's present condition.

Appellant's next witness was the chief medical ad-

viser of the industrial insurance department. He visited respondent at the hospital on May 7, 1936. After getting from respondent a full history of the case, he made a superficial examination of the right foot and found that it was quite swollen; he also found a spot, with a crust over it about the size of a quarter, near the big toe. He testified that it was difficult to make a diagnosis, but that the sore on the foot looked like impetigo or some superficial skin condition, and that the swelling itself looked more like a typical case of arthritis than like anything else.

The other three witnesses composed a special commission of physicians designated by the department to examine respondent. One of them, an orthopedic and industrial surgeon with thirty-four years' experience in practice, had, at one time, been chief medical adviser of the department. Another was a general and neurological surgeon with eleven years' experience as a teacher in medical schools and thirteen years' practice as a physician. The third was a specialist in neurology, nervous injuries, and nerve surgery, with nine years' practice to his credit.

These three specialists examined respondent on August 25, 1936. They found the right ankle swollen and the movement of the ankle-joint limited about fifty per cent. They also found a scar about the size of a quarter at the base of the big toe of the right foot. Two of them testified emphatically, and one with some reservation, that the condition from which respondent suffered was arthritis. All of them testified categorically that there was no causal connection between the injury of February 2, 1935, and respondent's existing condition.

Summarizing the testimony, we find that one of respondent's witnesses diagnosed the case as congenital defect of the lympathic system, from which he con-

cluded that the condition was lighted up and aggravated by the 1935 injury. The other witness for respondent had an entirely different theory and pronounced the trouble to be an extreme degree of flatfoot which "would be" aggravated by a weight falling upon the foot. On the other hand, one of appellant's witnesses diagnosed the case as impetigo and thrombophlebitis; the other four witnesses diagnosed it as chronic arthritis. Four of these witnesses were interrogated as to whether there was any causal connection between the injury of 1935 and respondent's existing condition, and they each testified that there was none.

Upon this state of the evidence, this court cannot properly say that the decision of the department was wrong or incorrect. We are convinced that each of the witnesses was honestly endeavoring to tell the truth, and we find nothing to impeach the veracity of any of them. However, upon a medical question regarding the nature and effect of a particular ailment, such as is involved here, those who are versed in the science of medicine are better able than are we to form a true and accurate opinion. The decision of the department has the support of five physicians, three of whom were specialists. Against it are the divided opinions of two other physicians. We find nothing in the case which would lead us to conclude that the probability of the existence of a causal connection between the injury of 1935 and respondent's present condition is indubitably greater than the probability of its absence. In this situation, the case is preeminently one where, according to Rem. Rev. Stat., § 7697, the decision of the department should remain undisturbed.

The judgment is reversed, with instructions to confirm the order of the joint board.

BEALS, ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—It seems to me that the decision of this case should turn upon a generally accepted rule of law which this court has frequently applied: Where oral testimony is in irreconcilable conflict with undisputed physical facts, the former will be disregarded and the decision will be rested upon the latter. *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848; *DeTemple v. Schafer Bros. Logging Co.,* 169 Wash. 102, 13 P. (2d) 446; *Proper v. Brenner,* 191 Wash. 540, 71 P. (2d) 389.

The ultimate physical facts upon which this case should turn are undisputed: (1) Injury sustained in course of employment in extrahazardous industry, (2) followed by steadily increasing physical impairment which culminates in total disability. To accept, in face of these undisputed physical facts, the opinion of medical experts that there is no causal connection between the injury and the total disability, is to set at naught the rule of law established and applied in the cases above cited.

I dissent.

MAIN, MILLARD, and GERAGHTY, JJ., concur with BLAKE, C. J.