[No. 27573. Department Two. February 5, 1940.]

EDMUND LITKE, *Respondent,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 98 P. (2d) 981.

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Chas. A. Turner,* for respondent.

JEFFERS, J.—This is an appeal by the department of labor and industries of the state of Washington from a judgment of the superior court for Snohomish county, entered on December 27, 1938, in favor of claimant, Edmund Litke, wherein the department was ordered to pay claimant an additional twenty-one degrees permanent partial disability, at thirty dollars per degree, or $630.

Edmund Litke was injured on July 13, 1927, while engaged in extrahazardous occupation for the Clark Nickerson Lumber Company, of Everett. Claimant continued to work until September 3, 1927, when he consulted Dr. Howard, the employer's contract doctor. Claimant has not worked since that date. On September 4, 1927, Dr. Howard made a report of his examination, wherein he described the injury as follows: "Soft tissue over extensor side of tarsal bones, left foot. Middle cuneiform shows degeneration of bone. Probably a T. B. infection." The doctor described the external evidence of injury as follows: "Elongated fluctuating mass across instep over tarsal bones. Painless, red at outer side, skin thin, with small—(rest of description illegible)," and described the treatment given as follows:

"Enlarged opening allowing large amount of thick mucous fluid out, looked tubercular in character. Boy says that this swelling followed—(illegible). Paid no attention to it on account of it not hurting him."

On September 21, 1927, a claim for injury was filed with the department and allowed, and monthly payments for time loss were made to September 10, 1928.

Dr. Howard treated claimant until sometime in June,

1928, during which time he scraped the bone of the foot twice and, on another occasion, removed a small portion of bone. On June 1, 1928, Dr. Howard asked permission to amputate the foot, and on June 4, 1928, such authority was given by the department. However, claimant's parents, he being a minor, refused to permit an amputation and, at their own expense, placed claimant under the care of Dr. Putnam, of Everett, who treated the patient for some weeks and advised that the foot be amputated. On June 27, 1928, at the direction of the department, claimant was examined by Dr. S. L. Caldbick, an Everett orthopedic surgeon, who recommended that the foot be amputated. On August 11, 1928, Dr. H. T. Buckner gave claimant a special examination and recommended that the foot be amputated.

On September 10, 1928, the department, by letter, informed claimant that, unless he submitted to an operation within fifteen days from the date of the receipt of the letter, his claim would be suspended and no compensation allowed during the period of his failure to comply with the directions of the department, citing as its authority for such action, Rem. Rev. Stat., § 7688 [P. C. § 3481]. Claimant's parents still refused permission to amputate, and compensation was stopped on September 10, 1928, permanent partial disability settlement, if any, to be made later.

Claimant continued to be treated by several Everett doctors at the expense of his parents, and, by November, 1929, his condition was somewhat improved. On December 13, 1929, Dr. Caldbick again examined claimant, at the direction of the department, and again advised amputation of the foot. The parents of claimant still refused to permit amputation, but in January, 1930, agreed that, if a commission of surgeons, appointed by the department, would examine claimant,

they would abide by the judgment of the commission. The department therefore directed an examination of claimant to be made by Drs. John F. LeCocq, D. A. Murray, and H. T. Buckner, and such examination was made on February 14, 1930. Their report to the department concludes with this statement:

"We do not think the sinuses will ever heal and believe that the foot is completely destroyed and the only thing in his case would be an amputation."

The parents still continued to refuse to permit an operation, and treatment was continued by several different Everett doctors. In May, 1935, claimant sought to have his case reopened, but the department refused to take any action, claiming that, as the order of suspension was entered in 1928, and more than three years had elapsed, the statute of limitation had run, and that they could not reopen the claim. On July 2, 1935, claimant filed a petition for a rehearing of the department's order of May 18, 1935, before the joint board. The application was granted, and a hearing was held on August 30, 1935.

At this hearing, the only witnesses were claimant and Dr. Lawrence E. Smith of Everett. Dr. Smith, who had treated claimant since May, 1935, testified there was no indication of tubercular infection; that amputation at that time was definitely not indicated; that the condition of the foot was reasonably fixed; that the general physical condition of claimant was good; and that there was about seventy-five per cent permanent partial disability. On December 4, 1935, the department awarded claimant $1,170 for thirty-nine degrees permanent partial disability, which award was accepted in settlement of the claim pending before the joint board on appeal from the supervisor's decision.

On March 15, 1937, claimant made application to the department to reopen his claim, on the ground that his condition, as a direct and proximate result of the injury received, had become worse and aggravated, to the extent that he is now totally disabled. On September 8, 1937, at the direction of the department, a commission comprised of the same doctors who had examined claimant in 1930, Drs. LeCocq, Murray, and Buckner, again made an examination of claimant's foot to determine if there had been any aggravation in claimant's condition since December 4, 1935, the date of the settlement. The report of this commission stated in part as follows:

"This same commission reported on this condition in 1930, and have not seen him since that time until today. We can only compare the condition as seen then and as seen today.

"The commission was unanimous in finding that there has been no aggravation of the condition since our last examination. On the contrary improvement is seen."

On September 21, 1937, the department notified claimant that no further action would be taken on his claim, and that it would remain closed in accordance with the final notice of December 4, 1935.

On December 1, 1937, a hearing before an examiner of the joint board was had on claimant's appeal from the order of the supervisor made September 21, 1937. At this hearing, the claimant and his physician, Dr. Braden, of Everett, who had been treating claimant for about a year prior to the hearing, testified, and Drs. LeCocq, Murray, and Buckner, members of the commission who had examined claimant, testified for the department. Claimant testified that, at the time of the settlement, the foot had healed up completely, and that he was able to walk with a cane; that three or four months after the settlement, the sores reopened and

pus oozed out, and that he had to use crutches again; that he began treatment with Dr. Braden soon after the reopening of the sores on his foot, and is still being treated by the doctor.

Dr. Braden testified that he started to treat claimant about a year previous to the hearing, and at that time the foot was in bad condition, discharging pus from four or five places, and that claimant's general condition was poor; that claimant had reacted violently to a tuberculin test and had an open, active tubercular condition of the foot; that the tubercular condition was not confined to the foot, but existed throughout claimant's entire system; that, within four or five months after he started to give claimant tuberculin, all the sores were closed and healed up, but that it would probably take another year's treatment to get the tuberculosis out of his system; that claimant will always be seriously handicapped, probably seventy to seventy-five per cent disability, even though he gets the tuberculosis out of his system; that he would not advise an amputation.

Drs. LeCocq, Murray, and Buckner all testified that the condition of claimant was better on September 8, 1937, than in 1930, when they made the prior examination. Drs. Buckner and LeCocq testified that amputation was still indicated; in other words, their testimony on this point is to the effect that claimant's foot, in its present condition, would not be as valuable or useful to him as an artificial foot. Dr. Murray, however, testified that he did not believe the foot should be amputated at that time. All three of these doctors testified that there was no aggravation since December, 1935, the date of the settlement, notwithstanding the fact that each one of them testified he had not seen claimant from February 14, 1930, to September 8, 1937, and had made no examination of him during that pe-

riod; that their opinion that there was no aggravation since 1935 was based entirely on the condition of claimant at the time of the examination on September 8th. All three doctors testified that they had no personal knowledge of claimant's condition in 1935.

The joint board determined that there had been no aggravation of claimant's condition due to his injury since December, 1935, and ordered that the claim remain closed. Claimant appealed to the superior court of Snohomish county, and the cause was tried to the court.

Finding of fact No. 3, as made by the court, is as follows:

"That as a direct and proximate result of said injury of July 13, 1927, and subsequent to departmental award of 39 degrees permanent partial disability as of December 4, 1935, that claimant's disability has increased 21 degrees over and above and in addition to that which he had on said December 4, 1935, and that all of said additional 21 degrees disability has resulted from aggravation of plaintiff's condition since said December 4, 1935, and claimant's present physical condition is solely the result thereof."

Finding of fact No. 4 states:

"That the court now finds from the medical testimony in the record that there was no examination by surgeons of department of labor and industries from 1930 until September, 1937, and that the departmental record is silent as to claimant's physical condition as of December 4, 1935. That claimant's physicians treating claimant since December 4, 1935, testify that claimant is 75% disabled and that such disability is the direct and proximate result of the original traumatic injury and aggravation since December 4, 1935."

Based upon the findings of fact, the court concluded that claimant was entitled to twenty-one degrees additional permanent partial disability, at thirty dollars per degree, for aggravation of the injury since the closing

of his claim on December 4, 1935. The court reversed the order of the joint board denying claimant such additional relief. This appeal followed.

■ The principal contention of appellant is that it has paid respondent the maximum amount to which he is entitled under Rem. Rev. Stat., § 7679 [P. C. § 3472]. Appellant further contends that, since it has paid respondent $1,170 for permanent partial disability, which is three-fourths of the amount specified for amputation of the left foot below the knee, nothing more can be paid by it, under the statutes. We think this contention without merit, for the reason that the alleged aggravation resulting from the injury to the foot is not confined to the foot itself, but for "poisoning of the entire system by reason of infection," as stated in respondent's petition to reopen the claim.

■ It is, of course, the rule, as we have many times held, that the decision of the department is *prima facie* correct, and the burden of proof is on the party attacking the decision. Rem. Rev. Stat., § 7697 [P. C. § 3488]; *Zankich v. Department of Labor & Industries,* 189 Wash. 25, 63 P. (2d) 427; *Cole v. Department of Labor & Industries,* 200 Wash. 296, 93 P. (2d) 413. In *Smith v. Department of Labor & Industries,* 180 Wash. 84, 38 P. (2d) 1016, we stated that

"The burden rested upon respondent to show that, after the closing of his claim, the condition caused by his injury had become aggravated."

■ We are convinced that respondent met this burden of proof, and that the evidence shows an aggravation since December, 1935. It will be remembered that there is no medical testimony in the record as to respondent's condition on December 4, 1935, when the settlement was made. The only medical testimony in the record, of respondent's condition near the date of December 4, 1935, is that of his physician, Dr. Smith,

given at the hearing on August 30, 1935. The department made no examination at that time. The testimony of Dr. Smith was that laboratory diagnosis at that time did not disclose any tubercular process whatever; that there was no tubercular infection present; and that respondent was "in good shape physically." Respondent's foot had healed, and there were no running sinuses or sores. The settlement was apparently based upon respondent's condition as shown by the testimony of Dr. Smith, given in August of that year.

At the rehearing before the examiner in 1937, four medical experts testified—respondent's physician and the three members of the commission appointed by the department. It is undisputed that the sores had reopened subsequent to the settlement and had been discharging pus. However, at the time of the examination by the commission in 1937, all the sores had healed. The testimony of respondent's physician as to the tubercular condition existing is not denied by the doctors testifying for the department, one of whom testified that the tubercular condition had apparently been arrested or walled off. It does not appear that the commission made a tuberculin test in their examination in 1937.

■■ Appellant, in its brief, further contends that:

"If the action of the court is to be sustained the department may in the future expect only a repetition of the same from individuals who refuse operative treatment in order that they may secure a greater award for permanent partial disability. That is not in contemplation of the law (citing Rem. Rev. Stat., § 7688)."

We think this last contention is completely answered by our decision in *Miller v. Department of Labor & Industries,* 200 Wash. 674, 94 P. (2d) 764. In the instant case, the department suspended the monthly payments as of September 10, 1928. Respondent is not

appealing from this suspension and is not claiming any payments for time loss.

We think the findings of fact herein are sustained by a preponderance of the evidence, and that the conclusions of law and judgment followed the findings.

The judgment is affirmed.

BLAKE, C. J., BEALS, STEINERT, and GERAGHTY, JJ., concur.

