(No. 20024

THE VALIER COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(VERONICA BARRACK *et al.* Defendants in Error.)

*Opinion filed April 17, 1930.*

JAMES A. GILLEN, and RUSSELL B. JAMES, (J. C. JAMES, of counsel,) for plaintiff in error.

A. C. L$_E$WIS, and Roy C. MARTIN, for defendants in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

May 26, 1926, Nick Barrack, an employee of plaintiff in error, the Valier Coal Company, received an injury in the course of and in the scope of his employment. He died August 23, 1927. His widow, Veronica Barrack, filed her petition with the Industrial Commission under the Workmen's Compensation act for compensation for herself and dependent minor children on account of such death. The cause was heard by an arbitrator, who made an award finding that claimant was entitled to an award of $19 per week for 288 weeks and for one week at $18, and found that $1167.12 had been paid on account of the injury. On review by the Industrial Commission on petition of plaintiff in error the award of the arbitrator was affirmed. After a hearing on *certiorari* the circuit court of Franklin county remanded the cause to the Industrial Commission for a rehearing, with the specific direction that the commission call as a court witness the physician who had attended Barrack in his lifetime. After a rehearing before the commission an award was made the same as was made by the arbitrator. This award was affirmed on *certiorari* by the circuit court, and the record is now here for review by leave of this court on *certiorari*.

When the cause came up for rehearing plaintiff in error objected to any proceedings before the commission for the reason that the circuit court had not set aside the prior award of the commission before remandment, and that therefore the cause was still pending in the circuit court. While the court did not specifically in its order state that the award of the commission was set aside, it was "ordered by the court that the cause be referred back to the Industrial Commission of Illinois, and said commission is hereby ordered and directed to obtain the testimony of the attend-

ing physician, namely, J. A. Opstedal, and that said physician be called by said commission as a court's witness, and for further testimony and for rehearing of said cause by the Industrial Commission of Illinois." This was equivalent to setting aside the award, and the commission properly overruled the objection.

It is next contended by plaintiff in error that the evidence failed to show that Barrack's death was the result of the injuries received by him May 26, 1926. The evidence shows that prior to the accident Barrack was a strong, healthy man, who never lost any time from work and that after the accident he was never able to work.

On May 26, 1926, Barrack, a coal loader about fifty years of age, while working in the mine of plaintiff in error in Valier, was injured by coal weighing from 800 to 1000 pounds falling from the face of the mine upon him and covering him. The coal was removed and he was found to be in a semi-conscious condition. There were three bleeding cuts on his head, his chest and pelvis had been squeezed and there were other bruises and contusions on his body. He was taken on a stretcher to the office of the company's physician, where he was given first aid and then taken home. The next day the physician ordered him taken to a hospital at DuQuoin, where he remained for three weeks or a month. It was there discovered that he had sustained a fracture of the superior pubic rami—one of the bones of the pelvis. While in the hospital he was treated by the physician daily at first and then two or three times a week. He was then returned to his home, where the physician, as the company's representative, continued to treat him until the time of his death, except for a short time in 1927 when he was sent by the company's representative to a Chicago physician for treatment. The day after the accident the injured man had blood in his urine. While the physician stated this condition cleared after the third day, lay witnesses testified to its recurrence at different

times at his home. He was crippled, as long as he lived, by reason of an exostosis or thickening and callus formation of the bone in the symphisis pubis that had been injured. When first discharged from the hospital at DuQuoin Barrack used crutches, later a cane, and there was a short period during which he used neither. The physician stated that after he came back from Chicago there was a marked improvement. A member of his family testified that a couple of months after his return from Chicago he took to his bed, where he stayed for about a month, when he started having spells of shortness of breath; that when he lay down he would have to get up again to get his breath. His wife testified to his spitting blood at various times from just after the accident until his death. She testified that he was weak at all times and never able to sit up all day after the accident.

On July 14, 1927, Barrack was examined by another physician, who found him in bed, cyanotic and in a semi-comatose condition, breathing with great effort and noisy rales. His face and lips appeared to be swollen, and an examination of the chest showed a very large, irregular heart, with numerous large valve-leaks, the chest filled with fluid diffused through the lung, the liver large and with abdomen and legs swollen. The physician's diagnosis and prognosis were that he had an uncompensated heart myocarditis, with dilation of the heart and pulmonary edema, and that he probably would not live very long, the condition being sufficient to cause death in August. This physician, testifying in answer to hypothetical questions, gave it as his opinion that the myocarditis could not have been caused by trauma in May, 1926, and that myocarditis is a degenerative change of the heart muscle and not the result of either direct or indirect external violence. On cross-examination, in answer to a hypothetical question propounded by claimant's attorney, he stated: "Basing my answer upon the information you gave me in the hypo-

thetical question, I would say in all probability the injury had something to do with his death. That is on the original hypothetical question. In my opinion it would be reasonable to believe that it had something to do with his death, either directly or indirectly." Other experts testifying in reply to hypothetical questions gave it as their opinion that the myocarditis was caused by an infection of the lung, resulting from the injury. The attending physician gave it as his opinion that acute dilation of the heart was the cause of Barrack's death; that he had syphilitic myocarditis; that he had syphilis at the time of the injury; that if he had a syphilitic condition prior to the injury, the injury he received was of such a nature that it would accelerate the action of syphilis on his heart condition, provided degenerative changes had already taken place in the heart; that if those changes were present the injury may have accelerated and aggravated the heart condition; that from his examination of the patient and treatment, having in mind the length of the sickness at the time he noticed symptoms of the myocarditis, and from his treatment and acquaintance with the case, he would rather think that there was degeneration of the heart from syphilis prior to the injury, for the reason that he was an old man and the changes from his syphilitic condition were of many years' standing, and he had "an Argyll-Robinson pupil and a Romberg;" that an Argyll-Robinson pupil is a symptom of disturbance of the innervation of the iris caused by syphilis, and is a condition in which the eyes do not re-act to light and accommodation.

From a consideration of all the evidence in the case we are of the opinion that the Industrial Commission was justified in finding that Barrack received an injury in the course and scope of his employment which proximately contributed to cause his death.

The judgment of the circuit court quashing the *certiorari* and affirming the award is affirmed.

*Judgment affirmed.*