(No. 3900—

MAE MUIR, Claimant, vs. STATE OF ILLINOIS, Respondent.

Opinion filed May 8, 1945.

LEONARD W. STEARNS, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

192

CHIEF JUSTICE DAMRON delivered the opinion of the court:

The claimant, Mae Muir, is the widow of William James Muir. She has filed this claim for an award under the Workmen's Compensation Act, for the death of her husband. The claim was filed on January 25, 1945, and the record was completed by claimant and respondent on April 11, 1945.

The record shows that deceased was employed by the Division of Highways from July 11, 1941, to March 31, 1944, as a laborer.

On December 6, 1942, Mr. Muir was shoveling cinders on to an ice-coated pavement from a moving truck, belonging to the Division. The truck stopped for Mr. Muir to throw cinders on an intersection. Without warning, the driver started the truck, throwing Mr. Muir to the pavement, bruising his back, hip, and legs.

On December 10, 1942, Mr. Muir reported to the Division of Highways that he was experiencing pain and requested treatment for his injuries. He was sent to Dr. H. B. Thomas, Professor and Head of the Department of Orthopedics, University of Illinois, College of Medicine, for examination and such treatment as the doctor should recommend. He was discharged by the doctor on January 8, 1943, and on January 9, 1943, Dr. Thomas submitted the following report to the Division of Highways:

"Patient's story of accident: Fell out of truck December 6, 1942, when driver started suddenly. Doesn't know how he landed. Small of back and hips sore. Nature of injury: Posture fair. Tends to a dorsum rotundum. Motions of spine good. Backward and to left

bending cause pain in left flank. Tender over left superior spine. Ecchymosis in left gluteal region. Reflexes all right. Blood pressure 200/70. Nothing apparent or palpable scalp. Complains of area over left posterior boss. Treatment: Heat and massage."

Mr. Muir returned to his employment with the Division of Highways on April 21, 1943, and worked regularly thereafter until March 31, 1944.

On the last-mentioned date, Mr. Muir was shoveling and broadcasting cinders from the rear of a Division truck and as they approached Stony Island Avenue and 95th Street from the West, and while being driven slowly through the intersection, scattering the cinders, Mr. Muir fell, violently, from the rear end of the truck box. He was taken by Chicago police ambulance to the South Chicago Community hospital, where he was pronounced dead by the resident physician.

Because of the suddenness of Mr. Muir's death, an autopsy was performed by Dr. Julian Dawson, a coroner's physician, in Chicago. The following is a copy of Dr. Dawson's findings at the autopsy:

"PATHOLOGICAL REPORT

A. L. BRODIE, Coroner of Cook County—*March 31, 1944.* Autopsy Revealed:

(1) No evidences of Internal Injury.
(2) Aortic (Valvular) Insufficiency of the Heart.
(3) Aortic Aneurysm (Sacculation of the Aorta). (Massive.)
(4) Coronary Trombosis and Occlusion.
(5) Generalized Arterio-Schlerosis.
(6) "Hour Glass" Stomach.

In my opinion the death of William J. Muir was due to the organic heart disease complicated by Coronary Occlusion and Aortic Aneurysm *(Natural Causes).*"
(Signed)   JULIAN DAWSON, M. D.

On the hearing, the widow testified that when her husband was first employed by the State, he was in good

health, but that since December 6, 1942, after he fell from the truck, he constantly complained that he was feeling bad; that his breathing was difficult and left arm ached. That he did not complain of such symptoms prior to the accident, and he informed her that he was going to try to get lighter work; that he could not stand that work any more; that it required quite an effort to lift the shovel and throw the ashes on the highway as he had been doing and the work was too heavy for him.

Edward Gebert was called as a witness on behalf of the respondent. He testified that he was the driver of the truck from which Mr. Muir fell on March 1, 1944, and that he had been acquainted with the deceased for about 20 years; that the deceased's health had been bad ever since he knew him. The following questions were propounded and answered:

Q. What was the trouble with him?
A. Heart.
Q. Had he complained to you about that?
A. Oh, yes. Sure. I have been up to visit him time and time again when he couldn't work.
Q. Because of his heart?
A. Heart? Yes.

Dr. Lewis R. Limarzi, a graduate of the University of Illinois, was called as a witness. He testified that on December 16, 1942, he examined the deceased at his office. He testified that the patient complained that he had fallen from a truck on which he was shoveling cinders; that he had thereby suffered certain injuries.

His blood pressure was 170/60; his pulse was 88; he did not, at that time, complain about a cardiac condition; the heart was enlarged to the left, and there was a precordial pulsation in the supraclavicular region. He had a systolic murmur over the aortic area, the liver and spleen were not palpable. The physician's impression,

at that time, was that Muir had an aortic lesion with hypertension. The doctor suggested an x-ray be made of the chest, electrocardiagram, and blood chemistry, and he made a notation on his record that the patient should do light work. He testified that he saw him again on January 7, 1943, his blood pressure was then 170/70 and pulse was regular. The doctor again insisted that the patient have an electrocardiagram and an x-ray of his chest made. He testified that he suggested these two tests because of his belief that the patient had an unhealthy or unnatural heart condition. He further testified that, in a patient such as Mr. Muir, having high blood pressure and a poor heart, he usually begins to decompensate, that is, he gets short of breath, his liver enlarges, his ankle swells, and he becomes bedridden; that was the reason the amount of work on the heart must be decreased. A question was propounded to Dr. Limarzi, which incorporated the findings of the coroner's report dated March 31, 1944, and his testimony regarding his examination of deceased. He answered that death was due because the patient performed overly hard physical labor in spite of his condition, as he had observed on the dates of his two examinations. He testified that exertion, with aortic aneurysm, such as he had observed on his examinations would cause lesion aortic, which produced his death. He further testified that he was sure that the effect of rather severe manual labor was a direct contributing cause of this patient's death; that he was not in a condition to do heavy work; that it definitely shortened his life.

It has been held on numerous occasions that when a person has a pre-existing disease and that disease is aggravated or accelerated in the course of his employment by accidental means and death results therefrom,

the death results from the injuries caused by the accident and is compensable. *Finkler* vs. *State*, 11 C. C. R. 55.

In the case of *Cameron, Joyce, & Co.* vs. *Ind. Com.* 324, Ill. 497, it was held that where an employee of a road construction company dies of valvular heart trouble within five months after his left arm and foot had been crushed, under the wheels of a heavy road grader, a finding that the injury contributed to the employee's death is warranted where the evidence shows that, although the employee had a chronic heart trouble, he had always been able to work up to the time of his injury, although he made satisfactory recovery from the local injuries to his arm and foot. *Valier Coal Co.* vs. *Ind. Com.*, 339 Ill. 458.

The Supreme Court has recently handed down a decision of *Marsh* vs. *Ind. Com.*, 386 Ill. p. 11, in which it was said:

"It is well settled that the Workmen's Compensation Act is not limited in its application to healthy employees. Where one sustains an accidental injury which aggravates a diseased condition or where, in the performance of his duties and as a result thereof, he is suddenly disabled, an accidental injury is sustained even though the result would not have obtained had the employee been in normal health."

*C. & A. Ry. Co.* vs. *Ind. Com.*, 310 Ill. 502; *Hahan* vs. *Ind. Com.*, 337 Ill. 39; *Simpson Co.* vs. *Ind. Com.*, 337 Ill. 454.

In *Mueller Const. Co.* vs. *Ind. Com.*, 283 Ill. 148, the Court said:

"An injury may be said to arise out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under

this test, if the injury can be seen to have followed as a natural incident of the work and to have contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment."

*Vincennes Bridge Co.* vs. *Ind. Com.*, 351 Ill. 444; *Mazursky* vs. *Ind. Com.*, 364 Ill. 445; *Scholl* vs. *Ind. Com.*, 366 Ill.

We conclude, therefore, that a careful consideration of this record justifies an award to claimant. We therefore make the following finding:

That the deceased and the respondent were on the 30th day of March, 1944, operating under the provisions of the Workmen's Compensation Act; that on the date last mentioned above said deceased sustained accidental injuries from which he died on the same date which did arise out of and in the course of his employment; that notice of said accident was given said respondent and claim for compensation on account thereof was made on said respondent within the time required under the provisions of said Act.

That the earnings of the deceased during the year next preceding the injury were $1,232.00 and that the average weekly wage was $23.69.

That deceased at time of injury was 68 years of age and had no children under 16 years of age, dependent upon him for support.

That the claimant is entitled to an award in the sum of $4,700.00 to be paid as follows: $13.92 per week for a period of 337 weeks with one final installment of $8.96, as provided in Paragraphs (a) and (1) of Section 7 and Paragraph (m) of Section 8 of said Act, as amended, for the reason that the injuries sustained caused the death of William James Muir, who left him surviving Mae Muir, the widow, whom he was under legal obligations to

support under the provisions of the Workmen's Compensation Act. That nothing has been paid on account of said injury and death.

The said claimant is now entitled to have and receive from the respondent the sum of $807.36, being the amount of compensation that has accrued to the 11th day of May, 1945. The remainder of said award to be paid to said claimant by said respondent in weekly payments, commencing one week from the date last above mentioned. This award is subject to the further orders of this Court.

_ This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."